UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**BOARDING SCHOOL REVIEW, LLC,**

     *Defendants,*

       - *vs.* -

**DELTA CAREER EDUCATION CORPORATION,** *et al.,*

     *Defendants.*

----

**DELTA CAREER EDUCATION CORPORATION,** *et al.*

     *Counterclaim Plaintiffs,*

       - *vs.* -

**BOARDING SCHOOL REVIEW, LLC**

     *Counterclaim Defendant.*

CIVIL ACTION NO.

1:11-cv-08921-DAB

---

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
TO DISMISS THE COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM FOR WHICH
RELIEF MAY BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Ronald D. Coleman (RC 3875)
Marcus A. Nussbaum (MN 9581)
**GOETZ FITZPATRICK LLP**
One Penn Plaza—Suite 4401
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
mnussbaum@goetzfitz.com
*Attorneys for Plaintiff*
*Boarding School Review, LLC*

# TABLE OF CASES

| Cases | Page |
|---|---|
| *Software for Moving, Inc. v. Frid*, 09 CIV 4341 DLC, 2010 WL 2143670 (S.D.N.Y. May 27, 2010) | 6 |
| *Louis Vuitton Malletier S.A. v. Warner Brothers Entertainment Inc.*, 11 Civ. 9436 (ALC) (HBP) (S.D.N.Y. June 15, 2012) | 6, 7, 13 |
| *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004) | 7 |
| *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995) | 7 |
| *Wi-Lan, Inc. v. LG Electronics, Inc.*, 10 CIV.432 LAK AJP, 2011 WL 3279075 (S.D.N.Y. Aug. 2, 2011) | 7 |
| *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) cert. denied, 131 S. Ct. 647, 178 L. Ed. 2d 513 (U.S. 2010) | 8 |
| *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir.1992) | 8 |
| *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 351 (1924) | 8 |
| *Yurman Studio, Inc. v. Castaneda*, 591 F.Supp.2d 471, 500–01 (S.D.N.Y. 2008) | 8 |
| *Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F.Supp. 619, 623 (S.D.N.Y. 1981) | 8 |
| *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) | 8, 15 |
| *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997) | 9 |
| *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 99 U.S.P.Q.2d 1799, 2011 WL 1630809 (S.D. Cal., April 28, 2011) | 9 |
| *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121-22 (2004) | 10 |
| *Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F. Supp. 267, 272-73 (S.D.N.Y. 1992) | 10 |
| *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) | 11 |
| *Devere Group GmbH v. Opinion Corp.*, __ F.Supp.2d __ , 11-CV-3360 FB LB, 2012 WL 2884986 (E.D.N.Y. July 13, 2012) | 11, 12, 14, 15 |
| *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir.1996) | 11 |

| | |
|---|---|
| *Hasbro, Inc. v. Lanard Toys, Ltd.* 858 F.2d 70, 78 (2d Cir.1988) | 11 |
| *Hormel Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497, 504 (2d Cir.1996) | 11 |
| *Ascentive, LLC v. Opinion Corp.,* 842 F. Supp. 2d 450, 463 (E.D.N.Y. 2011) | 12, 15, 17, 18 |
| *Lamparello v. Falwell,* 420 F.3d 309, 315-16 (4th Cir. 2005) | 13, 15 |
| *Brookfield Communics., Inc. v. West Coast Entmt. Corp.,* 174 F.3d 1036, 1064 (9th Cir. 1999) | 13 |
| *Weiss Assoc., Inc. v. HRL Assoc., Inc.,* 902 F.2d 1546 (Fed. Cir. 1990) | 14 |
| *Bihari v. Gross,* 119 F. Supp. 2d 309, 320 (S.D.N.Y. 2000) | 14, 15 |
| *Girl Scouts of U. S. of Am. v. Personality Posters Mfg. Co.,* 304 F. Supp. 1228, 1231 (S.D.N.Y. 1969) | 14 |
| *Big Star Entertainment, Inc. v. Next Big Star, Inc.,* 105 F.Supp.2d 185, 209–10 (S.D.N.Y. 2000) | 15 |
| *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,* 800 F.Supp.2d 515, 537–38 (S.D.N.Y.2011) | 15 |
| *Architectural Mailboxes, LLC v. Epoch Design, LLC,* 2011 WL 1630809 | 16 |
| *Steinway, Inc. v. Ashley,* 01 CIV 9703 GEL, 2002 WL 122929 (S.D.N.Y. Jan. 29, 2002) | 16 |
| *Inwood Labs., Inc. v. Ives Labs, Inc.,* 456 U.S. 844, 853-54 (1982) | 16 |
| *Polymer Tech. Corp. v. Mimran,* 975 F.2d 58, 64 (2d Cir. 1992) | 17 |
| *Fare Deals, Ltd. v. World Choice Travel.com, Inc.,* 180 F.Supp.2d 678 (D. Md. 2001) | 17 |
| *Sony Computer Entertainment America, Inc. v. GameMasters,* 87 F.Supp.2d 976, 986 (N.D. Cal. 1999) | 17 |
| *Lockheed Martin Corp. v. Network Solutions, Inc.* 985 F.Supp.949, 964-965 (C.D. Cal. 1997) | 17 |
| *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.,* 494 F.3d 788, 807 (9th Cir.2007) | 18 |
| *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,* 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006) | 19 |
| *NXIVM Corp. v. Ross Inst.,* 364 F.3d 471, 476-77 (2d Cir. 2004) | 20, 21 |
| *S&L Vitamins, Inc. v. Australian Gold, Inc.,* 521 F. Supp. 2d 188 (E.D.N.Y. 2007) | 20, 21 |
| *Castle Rock Entm't v. Carol Publ'g Group,* 150 F.3d 132, 146 (2d Cir.1998) | 21 |

| Statutes and Treatises | |
|---|---|
| Fed. R. Civ. P. 12(b)(6) | 6 |
| Fed. R. Civ. P.8(a)(2) | 6 |
| 15 U.S.C. § 1115(b)(4) | 7 |
| N.Y. Gen. Bus. Law §349 | 18 |
| 17 U.S.C. § 107 | 19 |
| 17 U.S.C. § 412 | 22 |
| 4 J. Thomas McCarthy, *Mccarthy On Trademarks & Unfair Competition* (4th ed. 2011) § 23:11 | 8 |
| Coleman, Jane, *Secondary Trademark Infringement* | 17 |

## PRELIMINARY STATEMENT

Plaintiff Boarding School Review, LLC ("BSR") operates an Internet website called Community College Review, found at www.communitycollegereview.com, that provides Internet users, for free, with profiles of community colleges and their surrounding communities throughout the United States. Community College Review earns revenue by the sale of advertising on its website.  Defendants, all affiliated, operate for-profit post-secondary schools whose information is included among the hundreds of schools profiled, in entirely neutral fashion, on Community College Review.  Defendants do not wish for their businesses to be included on Community College Review, so have, since 2010, been engaged in a campaign of escalating cease-and-demand correspondence to BSR, threatening every kind of legal doom based on dubious copyright and trademark theories if BSR did not essentially remove the profiles.  This included threats implicating statutory damages and attorneys fees for copyright infringement – for works that were not even registered.

BSR attempted to cooperate, but eventually concluded that defendants' demands were not reasonable, and filed this action seeking a declaratory judgment of non-infringement so that it continue its business unmolested, and afford its customers the full scope of information they expect from BSR's website.

As set forth below in detail, BSR's use of defendants' trademarks  is protected as fair use, could not – as a matter of law – cause a likelihood of confusion, and is otherwise entirely lawful.  In addition, defendants' copyright claims are technically deficient based on their tardy registration – years after the works' first publication and indeed nearly six months after this action was first filed – and are also amenable to dismissal under straightforward statutory standards of fair use. Thus BSR submits that it is entitled to an order at this time dismissing defendants' counterclaims for failure to sustain a cause of action for which relief can be granted.

## STATEMENT OF FACTS[1]

Plaintiff Boarding School Review, LLC ("BSR") operates an Internet website called Community College Review, found at www.communitycollegereview.com, that provides Internet users, for free, with profiles of community colleges and their surrounding communities throughout the United States. Community College Review earns revenue by the sale of advertising on its website. Because the usefulness of Community College Review is central to its success as a resource and a business, and as a matter of commercial ethics, BSR seeks to insure that information on its profiles is accurate and up to date. For this reason, school administrators may, free of charge, update and expand their college's profile at any time, on Community College Review merely by requesting log-in information and confirming that they are authorized to represent a given school.

Defendant / counterclaim plaintiff Delta Career Education Corporation ("Delta") is an educational services company and is a parent corporation which owns the following subsidiaries, each of which is a defendant and counterclaim plaintiff in this action: Miller-Motte Business College, Inc., Southwest Business Colleges, Inc., Career Training Specialists, Inc., The Miami-Jacobs Business College Co., Berks Technical Institute, Inc., McCann Education Centers, Inc., and Creative Circus, Inc.. Delta also owns Southwest Business Colleges, Inc., which operates Lamson College, Lamson Institute, National Career Education, Institute for Business and Technology, and Tucson College. The defendants each operate for-profit postsecondary schools in various fields, each of which is profiled on BSR's Community College Review's website.

On April 9, 2010, counsel for Delta wrote to plaintiff and claimed that plaintiff's use of various trademarks owned or claimed by Delta and used in connection with its various for-profit

---

[1] The facts set forth herein are based on the First Amended Complaint, the Answer, Affirmative Defenses and Counterclaim ("Answer and Counterclaims"), including as appropriate the responses to the allegations of the First Amended Complaint not denied by the Answer and Counterclaims, as well as the exhibits to the respective pleadings.

postsecondary schools (the "Delta Marks") were being infringed on BSR's Community College Review website.  That correspondence and the enclosures transmitted with are attached to BSR's First Amended Complaint as Exhibit A. Delta claimed that BSR's actions constituted trademark infringement, dilution, unfair competition under both federal and state law. Delta also claimed that BSR's actions constituted copyright infringement. Delta demanded that BSR "cease any and all unauthorized use of the Delta Marks and all variations thereof.  This included all advertising and promotional efforts, including Internet-related activities and any keywords, adwords or domain names that make any reference to the Delta Marks." In response to Delta's letter of April 9, 2010, defendant removed "screenshots," which are images depicting the website of the school that is the subject of a given profile, for the schools identified in the letter.

On November 18, 2011, Delta's counsel wrote to BSR again and demanded that all the actions demanded in its April 9, 2010 correspondence be taken immediately.  A true copy of that correspondence and the enclosures transmitted with it are attached to BSR's First Amended Complaint as Exhibit B. Delta's November 18, 2011 correspondence also demanded that BSR remove from the Community College Review website certain videos available on YouTube, the video sharing and social networking website owned and operated by Google, Inc. The videos referred to by Delta were placed on the Community College Review website by utilizing YouTube's publicly-available "embed" code, which can be obtained, copied and pasted by any user that clicks a button reading "share" found beneath the videos on the YouTube site.

Delta demanded, in its November 18, 2011 letter, that BSR cease and desist "all infringing use of Delta's trademarks and copyrights on your websites including www.communitycollegereview.com, and in any adword or other paid keyword accounts . . ." and stated that its counsel would "take action to preserve our client's legal rights" absent its satisfaction that BSR had complied. Delta also claimed that BSR was engaged in false or deceptive advertising

3

under federal and state law on the ground that certain information on Community College Review profiles relating to Delta schools was incorrect or inaccurate.  Delta at no time made any effort to update or correct any information on Community College Review.

Delta's November 18, 2011 letter, while claiming that information on Community College Review contains "information and statistics about Delta schools which may be outdated, inaccurate or omit relevant information," provided neither examples of specific outdated, inaccurate or incomplete information to BSR, nor any up-to-date, accurate or complete information, such that BSR could make appropriate changes. On November 23, 2011, counsel for defendant Weston – which is the same law firm and attorney as counsel for defendant Delta – wrote to plaintiff and claimed that plaintiff's use of various trademarks owned or claimed by Weston and used in connection with its various postsecondary schools (the "Weston Marks") were being infringed on BSR's Community College Review website.  A true copy of that correspondence and the enclosures transmitted with it is attached to BSR's First Amended Complaint as Exhibit C.  Weston claimed that BSR's actions constituted trademark infringement, dilution, unfair competition under both federal and state law. Weston also claimed that BSR's actions constituted copyright infringement, including by virtue of the posting on the Community College Review website of certain videos available on YouTube. Weston also claimed that BSR was engaged in false or deceptive advertising under federal and state law on the ground that certain information on Community College Review profiles relating to Weston schools was incorrect or inaccurate. Weston has at no time made any effort to update or correct any information on Community College Review.

Weston's November 23, 2011 letter, while claiming that information on Community College Review contains "information and statistics about Heritage which may be outdated, inaccurate or omit relevant information," provided neither examples of specific outdated, inaccurate or incomplete information to BSR, nor any up-to-date, accurate or complete information, such that

BSR could make appropriate changes. Referring to the Weston Marks as the "Heritage Marks" as set forth in its letter, Weston demanded that BSR "cease any and all unauthorized use of the Heritage Marks, copyrighted content and all variations thereof.  This includes all advertising and promotional efforts, including Internet-related activities and any keywords, adwords or domain names that make any reference to the Heritage Marks" and threatened legal action against BSR absent the same.

The Complaint in this action was filed on December 7, 2011; the First Amended Complaint, on June 15, 2012.  Plaintiff seeks a declaration from this court that: (1) plaintiff's use of the various trademarks and alleged trademarks associated with the each defendant does not infringe any trademark or other right held by any defendant; (2) plaintiff's use of the various works in which copyright is alleged to be owned by each defendant does not infringe any copyright or other right held by any defendant; (3) plaintiff's conduct does not constitute false or misleading advertising; and (4) defendants take nothing from plaintiff in respect of their threatened claims.  On July 5, 2012, defendants filed their Answer, Affirmative Defenses and Counterclaims ("Answer and Counterclaims"), alleging causes of action sounding in copyright and trademark infringement, unfair competition, trademark dilution, and for deceptive trade practices under New York law.

## LEGAL ARGUMENT

**I.**   **DEFENDANTS HAVE FAILED TO STATE CLAIMS SOUNDING IN TRADEMARK INFRINGEMENT OR UNFAIR COMPETITION.**

      **a.  Motion to dismiss standard**

The modern standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well known:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This rule does not require detailed factual allegations, but a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . .
>
> A trial court considering a Rule 12(b)(6) motion accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the defendants' favor. To survive dismissal, a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level. In other words, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the defendant pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Software for Moving, Inc. v. Frid*, 09 CIV 4341 DLC, 2010 WL 2143670 (S.D.N.Y. May 27, 2010)

(internal quotations and citations omitted).

This Court will not hesitate to dismiss facially implausible trademark infringement claims, such as the ones at bar, on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See*, e.g., *Louis Vuitton Malletier S.A. v. Warner Brothers Entertainment Inc.*, 11 Civ. 9436 (ALC) (HBP) (S.D.N.Y. June 15, 2012).  As demonstrated below, defendants cannot meet the standard for pleading a plausible cause of action for trademark infringement or unfair competition here, and their raft of counterclaims based on unfair-competition based theories of recovery[2] should be dismissed.

---

[2]  This includes the following counterclaims:  The Third Claim (infringement of the Delta marks), Fourth Claim (infringement of the Heritage marks), Fifth Claim (unfair competition under § 43(a) of the Lanham Act as to Delta), Sixth Claim (unfair competition under § 43(a) of the Lanham Act as to Heritage), Seventh Claim (federal trademark dilution as to Delta), Eighth Claim (federal trademark dilution as to Heritage), Ninth Claim (common law unfair competition as to Delta), Tenth Claim (common law unfair competition as to Heritage), Eleventh Claim (deceptive trade practices under N.Y. General Business Law § 349), Twelfth Claim (deceptive trade practices under N.Y. General

To the extent any of the trademarks claimed by defendants are unregistered, that defendants plausibly allege – "that its unregistered ... trade name is distinctive and that numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question." *Sunward Electronics, Inc. v. McDonald,* 362 F.3d 17, 25 (2d Cir. 2004).  This, as demonstrated below, they have failed to do.  Moreover, federal courts applying New York law analyze claims under New York's unfair competition statutes in a fashion similar to how they analyze claims under the Lanham Act.  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 119 (2d Cir. 2006)

As a matter of law, defendants' trademark claims as pled cannot overcome the fair use defense.  Nor do they amount to a plausible claim of likelihood of confusion.  For these reasons, BSR is entitled to an order dismissing defendants' counterclaims.

### b.  BSR's use of defendants' trademarks is a fair use

Defendants mistake the Lanham Act for an all-purpose "brand control" law that gives the owner of a trademark registration the right to determine what strangers may say about their product or service.  It is not that.  Nothing in the Lanham Act, or the trademark or unfair competition law of the State of New York, makes it illegal to describe a thing by the use of the trademark by which it is known, as Boarding School Review does; nor could it.  Such use of a trademark is a fair use, i.e., "a use, otherwise than as a mark . . . which is descriptive of and used fairly and in good faith only to describe the goods or services." 15 U.S.C. § 1115(b)(4).  Fair use "permits others to use a protected mark to describe aspects of their own goods." *Car–Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir. 1995).

A useful, recent and entirely apposite summary of the black-letter law of fair use in trademark is found in *Wi-Lan, Inc. v. LG Electronics, Inc.*, 10 CIV.432 LAK AJP, 2011 WL 3279075

---

Business Law § 360-1 as to Delta) and thirteenth claim (labeled the Fourteenth Claim) (deceptive trade practices under N.Y. General Business Law § 360-1 as to Heritage).

(S.D.N.Y. Aug. 2, 2011) *report and recommendation adopted as modified as to other issues,* 10 CIV.432 LAK

AJP, 2012 WL 760148 (S.D.N.Y. Mar. 7, 2012):

> Merely using a logo to identify the company associated with that logo, without more, does not constitute trademark infringement. *See, e.g., Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93, 102–03 (2d Cir.) ("[A] defendant may lawfully use a defendants' trademark where doing so is necessary to describe the defendants' product and does not imply a false affiliation or endorsement by the defendants of the defendant."), *cert. denied,* 131 S.Ct. 647 (2010); *New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 308 (9th Cir.1992) ("'When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth." (quoting *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368, 44 S.Ct. 350, 351 (1924) (Holmes, J.))); *Yurman Studio, Inc. v. Castaneda,* 591 F.Supp.2d 471, 500–01 (S.D.N.Y. 2008) ("[T]he doctrine of nominative fair use protects the commercial use of another's trademark as long as the user does not use the mark to refer to its own products, use the mark more than is necessary to identify the product, or use the mark in a way that suggests sponsorship by the owner of the mark."); *Invicta Plastics (USA) Ltd. v. Mego Corp.,* 523 F.Supp. 619, 623 (S.D.N.Y. 1981) ("Truthful references to the trademark of another are permissible as long as the 'unauthorized' reference does not cause confusion as to the source"); *see also,* 4 J. Thomas McCarthy, Mccarthy On Trademarks & Unfair Competition (4th ed. 2011) § 23:11 ("[A] use of another's trademark to identify, not the defendant's goods or services, but the **plaintiff's** goods or services .... is not an infringement so long as there is no likelihood of confusion."). (emphasis added)

These principles can readily be applied to the facts alleged in the counterclaims. There is no plausible implication of "affiliation or endorsement," much less deception, here. Nor is there any reference to the services of Boarding School Review utilizing the trademarks of defendants as to suggest that these defendants have set up a website to provide information about community colleges and other post-secondary schools. There is no plausible confusion as to the source of the services provided by Boarding School Review; it merely calls the for-profit school businesses by their names, which may or may not be trademarks. It is, to paraphrase McCarthy per the quote above, use of defendants' trademarks to identify not BSR's goods or services, but the **defendants' own goods or services**. Axiomatically, this is not infringement.

This Court's decision in *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) *aff'd*, 355 F. App'x. 508 (2d Cir. 2009) is instructive. In *Cintas* a uniform supplier sued a number of labor unions and their employees, bringing claims under RICO, the Lanham Act, and state law.

Defendants were accused of trademark infringement for their use of plaintiff's trademark, CINTAS, for a website called "Cintas Exposed" bearing the domain name www.cintasexposed.org. *Id.* at 575. Much as the defendants claim here, Cintas claimed that this website "competed unfairly . . . confusing [its] customers, diverting customers, [and] sales and profits away from [it]." *Id.*  The Southern District dismissed the trademark claim. After setting out the *Polaroid* factors and finding that at least four of them favored defendants, the Court wrote:

> Defendants are not using the "CINTAS" mark as a "source identifier", but rather solely to criticize Cintas's corporate practices. *See United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997) (noting there is no justification for relief under Section 1114 and 1125(a), when "the defendants ... us[e] plaintiff's mark not in a manner that would create confusion as to the source, but rather as part of a message whose meaning depend[s] on reference to plaintiffs' product"). While the materials available on Defendants' websites may disparage Cintas, the likelihood that Cintas's actual or potential customers would be confused about who provides CINTAS goods and services is remote.

*Id.* at 579.  There is nothing about this analysis which requires that parties expend fortunes in discovery before applying it to the facts as alleged in the pleadings. *See, Architectural Mailboxes, LLC v. Epoch Design, LLC*, 99 U.S.P.Q.2d 1799, 2011 WL 1630809 (S.D. Cal., April 28, 2011) at *4.  Indeed, justice, judicial efficiency and just plain fairness demand that cases as obviously meritless as this one be dismissed and that the mere cost of meritless litigation not be made a tool to silence expression.

### c.   BSR's use of defendants' trademarks is not likely to cause a mistake as to origin, sponsorship or affiliation as a matter of law

Defendants' trademark and unfair-competition based counterclaims cannot succeed on the merits because even accepting their allegations as true, defendants do not plausibly allege the gravamen of such claims:  That BSR's use of the alleged trademarks in connection with the web pages criticizing the products with which they are associated is likely to cause confusion, mistake, or deception.  Indeed, not only is the use alleged not infringing, it is expressive activity protected by the First Amendment, and defendants' claim that for trademark infringement should be dismissed.

9

As a preliminary matter, a defense of fair use raises the bar when analyzing whether defendants have alleged actionable likelihood of confusion. "Since the burden of proving likelihood of confusion rests with the [trademark owner], and the fair use defendant has no free-standing need to show confusion unlikely, it follows . . . that some possibility of consumer confusion must be compatible with fair use, and so it is." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121-22 (2004).   As demonstrated in the following section, however, that possibility is particularly remote under the facts alleged here.

Defendants wish to utilize the Lanham Act and other laws aimed at unfair competition as a speech-control measure.  They do not want consumers to have the ready ability to compare their offerings with those of competitors, as they can do on Community College Review.  But a trademark owner's rights are violated only where an unauthorized use "has a substantial capacity to mislead consumers (or other concerned actors in the marketplace) into a confusion as to the entity furnishing the goods or services." *Yankee Pub. Inc. v. News America Pub. Inc.,* 809 F. Supp. 267, 272-73 (S.D.N.Y. 1992).

Even under §43(a) of the Lanham Act, which protects against trademark likelihood of confusion not only as to source, but also as to affiliation, connection, sponsorship, association, or approval, the use of defendants' alleged trademarks on the Community College Review website could not plausibly lead even the dimmest Internet user to believe that this information, containing basic data about hundreds of institutions, was vetted and approved by each and every one of them. Nor could the offerings of companies supposedly competing with defendants, and whose advertisements appear on the pages of the website discussing defendants' for-profit school businesses, possibly be construed as being "affiliated, connected, sponsored, associated, or approved" by defendants.  If they could, they would not be competitors.

Courts in this Circuit, of course, consider trademark infringement claims by reference to the *Polaroid* factors set forth in *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  Last month in *Devere Group GmbH v. Opinion Corp.*, __ F.Supp.2d __ , 11-CV-3360 FB LB, 2012 WL 2884986 (E.D.N.Y. July 13, 2012) the Eastern District of New York dismissed claims sounding in trademark and unfair competition much like those here.  In *Devere*, these claims were brought by a party, like defendants here, seeking to silence any reference to it found on an omnibus review site featuring innumerable companies and meant to be read by consumers.  As Senior U.S. District Judge Frederic Block explained in *Devere*, application of those factors readily demonstrate the poor match between the law of trademark and unfair competition and the goal of censoring third parties who use a trademark to describe the subject about which they are expressing themselves:

> Several of the *Polaroid* factors weigh against deVere's Lanham Act claim. First, deVere's services do not compete with those of Opinion Corp. *See Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 480 (2d Cir.1996) ("The 'proximity-of-the-products' inquiry concerns whether and to what extent the two products compete with each other."). Nor has deVere provided any allegations of actual consumer confusion. *See id.* ("While evidence of actual confusion is not necessary to the defendants' claim, 'its lack may under some circumstances be used against the defendants.' ") (quoting *Hasbro, Inc. v. Lanard Toys, Ltd.* 858 F.2d 70, 78 (2d Cir.1988)). In addition, there is no issue of deVere wishing to "bridge the gap" between its products and Opinion Corp.'s product. This factor refers to the defendants' "interest in preserving expansion and entering into related fields." *Hormel Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497, 504 (2d Cir.1996). DeVere "has shown no intention of entering into the field" of consumer complaint websites, "and there is no evidence that consumers would relate [deVere] to such an enterprise." *Id.* Finally, deVere has not alleged bad faith on the part of Opinion Corp. because, in the trademark context, "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus.,* 412 F.3d at 388.[4]

*Devere Group GmbH v. Opinion Corp.*, 11-CV-3360 FB LB, 2012 WL 2884986 (E.D.N.Y. July 13, 2012).  Each one of these factors applies the same way to this case as it did in *DeVere*.  Here too BSR's website does not compete with these for-profit educational institutions – there is no proximity; here too there is no allegation of actual confusion; here too there is no allegation of any prospect of future competition, or bridging the gap; and here too, notwithstanding formulaic

recitations about bad faith, there is no bad faith of the kind recognized by the law in this context: "an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products."

In providing this analytical framework that is so readily applicable to the case at bar, the Eastern District in *Devere* relied and cited on another recent case in that District, *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 463 (E.D.N.Y. 2011).  In *Ascentive*, Senior U.S. District Judge I. Leo Glasser denied a motion by the plaintiffs for a preliminary injunction for supposed trademark infringement and other torts of competition meant, as here, solely to remove certain businesses from a website that provided consumer information not under their control.  Judge Glasser explained that whatever the operators of the website were engaged in, it was certainly not trademark infringement.  Because there was no plausible likelihood of confusion, he ruled that plaintiffs were unlikely to succeed on the merits of their claims and denied their injunction motion:

> This same conclusion [that confusion arising out of the use of metatags is not likely] holds true for [defendant] PissedConsumer's use of the plaintiffs' marks in the content of the PissedConsumer site itself. . . .

> There is little likelihood that a potential consumer visiting PissedConsumer would be confused about whether it was the source of plaintiffs' goods or whether Ascentive or Classic sponsored or otherwise approved of PissedConsumer's use of their marks.  Indeed, the domain names here . . .  Instead, after a brief inspection of the content of PissedConsumer's website, the user would realize that they were visiting a third-party gripe site for "pissed" consumers. The Court thus concludes that PissedConsumer's use of plaintiffs' marks in domain names and in the text of the site itself is not likely to cause confusion as to whether PissedConsumer was the source of plaintiffs' products or whether plaintiffs approved of or otherwise endorsed the use of their marks.

842 F. Supp. 2d at 464.  Much the same can readily be said for a website called Community College Review.  While lacking the severely negative connotation of "PissedConsumer.com" (which can hardly be held against BSR), nothing on the website suggests – either in name or "after a brief inspection of the content" of the website" – that it is a website operated by the obscure defendants in this action.  Not every Lanham Act case needs discovery and "development" to be seen as

12

meritless, as this Court acknowledged in *Louis Vuitton Malletier S.A. v. Warner Brothers Entertainment Inc.*, *supra*:

> In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work (and without relying on the likelihood of confusion factors to do so).... In a case such as this one, no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression.

Just such interests are at play here, and BSR submits that defendants have, as a matter of law, failed in their counterclaims to plead a plausible likelihood of confusion arising out of the use of their marks.

### d. The "initial interest confusion" doctrine is at best inapplicable here

The "initial interest confusion" doctrine is a dubious concept under which the Lanham Act supposedly "forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated." *Lamparello v. Falwell*, 420 F.3d 309, 315-16 (4th Cir. 2005) (internal quotations omitted). It replaces traditional tort concepts of harm, or even likelihood of harm, with a highly subjective, almost *per se* test for use on the Internet. The doctrine was famously rationalized in the Ninth Circuit's opinion in *Brookfield Communics., Inc. v. West Coast Entmt. Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) utilizing the analogy of a misleading highway sign that imposes harm by causing consumers to "get off at the wrong exit." *Id.*

But the doctrine of "initial interest," with its tenuous claim to describing tort-induced harm where none has really occurred, has been the subject of considerable criticism in general – especially in the Internet context. Both the First and Fourth Circuits have expressed considerable skepticism about whether the doctrine of initial interest confusion is valid at all. *See Lamparello*, 420 F.3d at 317; *Hasbro, Inc. v. Clue Computing*, 232 F.3d 1, 2 (1st Cir. 2000). Developed in a traditional, "brick-and-

mortar" sales context, the doctrine was meant to be applied only where "a potential purchaser is initially confused [such that] the [senior seller] may be **precluded from further consideration.**" *Weiss Assoc., Inc. v. HRL Assoc., Inc.*, 902 F.2d 1546 (Fed. Cir. 1990) (emphasis added) – only once the potential customer is "off the highway."   For this reason, the application of this analogy to the virtual as opposed to a real world was questioned in *Bihari*, where this Court wrote:

> The harm caused by a misleading billboard on the highway is difficult to correct. In contrast, on the information superhighway, resuming one's search for the correct website is relatively simple. With one click of the mouse and few seconds delay, a viewer can return to the search engine's results and resume searching for the original website.

*Bihari*, 199 F.Supp.2d at 320, n. 15.

This Court's ruling in *Bihari* is consistent with longstanding principles of trademark law. In *Girl Scouts of U. S. of Am. v. Personality Posters Mfg. Co.*, 304 F. Supp. 1228, 1231 (S.D.N.Y. 1969), for example, the Court rejected transient confusion in a social-commentary context:

> Even if we hypothesize that some viewers might at first believe that the subject of the poster is actually a pregnant Girl Scout, it is highly doubtful that any such impression would be more than momentary or that any viewer would conclude that the Girl Scouts had printed or distributed the poster.

304 F. Supp. at 1231. As recognized in *Girl Scouts*, ephemeral moments of confusion that do not threaten to divert sales are not evidence of actionable harm under the Lanham Act.  Real harm must be shown to recover for any tortious conduct, but all the more so when such harm is posited as a basis for overcoming the constitutional protection of free speech. See, *id.* at 1235.  Similarly, there is no actual allegation of anything specific happening to defendants that could be objectively described as harm attributable to BSR – merely conclusory claims that they have been "damaged."

Based on the same reasoning, and citing *Bihari* for the point, Judge Block wrote in *Devere*:

> The doctrine [of initial interest confusion] is not applicable here. [The consumer gripe site] PissedConsumer.com does not divert Internet users away from deVere's website because deVere does not have a website that competes for business with PissedConsumer.com; Opinion Corp. provides a forum for customer criticism of businesses, while deVere provides financial services. *See Bihari*, 119 F.Supp.2d at 320

(for purposes of the initial interest confusion doctrine, a "gripe site" was not in competition with the business that its contents criticized); *see Lamparello v. Falwell,* 420 F.3d 309, 317 (4th Cir.2004) (the "critical element" of initial interest confusion – "use of another firm's mark to capture the markholder's customers and profits – simply does not exist when the alleged infringer establishes a gripe site that criticizes the markholder."). Initial interest confusion does not arise "in circumstances where the products in question are used for substantially different purposes and therefore the merchants are not in close competitive proximity." *Big Star Entertainment, Inc. v. Next Big Star, Inc.,* 105 F.Supp.2d 185, 209–10 (S.D.N.Y. 2000). Accordingly, deVere's allegations "do not create any plausible inference of intentional deception"; there is no risk that a customer seeking deVere financial services would mistakenly visit and divert their business to PissedConsumer.com. *Cintas,* 601 F.Supp.2d at 579.

*Id.* at __ F.Supp.2d __, *5.  The opinion in *Ascentive* expresses similar skepticism regarding initial interest confusion in general, and as applied to claims of this nature specifically:

> Th[e "highway sign"] analogy and *Brookfield* itself have been roundly criticized by courts and commentators. . . .The Court agrees with the criticism that the harm caused by initial interest confusion in the internet context is minimal as "with one click of the mouse and a few seconds delay, a viewer can return to the search engine's results and resume searching for the original website." *Bihari,* 119 F.Supp.2d at 320 n. 15.

> In any event, unlike in *Brookfield*, plaintiffs and PissedConsumer are not competitors. In such circumstances, as the Ninth Circuit acknowledged, "the likelihood of confusion would probably be remote. . . . Additionally, unlike in *Brookfield*, PissedConsumer is using the marks to describe the contents of its pages concerning Ascentive and Classic, not to suggest affiliation or source. . . .

842 F.Supp.2d at 466-67.  The flat-out failure to plead an actionable trademark or unfair competition claim under any theory whatsoever was so obvious to the *Ascentive* court that it did not even deem it necessary to address the issues of fair use or the myriad other defenses interposed against the plaintiffs' motion for a preliminary injunction:

> In sum, for all of these reasons, plaintiffs are unlikely to succeed on the merits of their Lanham Act claims. Nor have they demonstrated sufficiently serious questions going to the merits to make them a fair ground for litigation. Additionally, because, as plaintiffs correctly note, the test for the likelihood of success of their "common law claims is the same as the test for infringement and unfair competition under the Lanham Act," Ascentive Mem. at 18; Classic Mem. at 17; *see also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,* 800 F.Supp.2d 515, 537–38 (S.D.N.Y.2011), their state law claims for trademark infringement, unfair competition, and false designation of origin are also unlikely to succeed or be a fair ground for litigation.

15

842 F. Supp. 2d at 471 (footnote omitted).  The Court should so conclude here and, as in the procedural situation facing the court in *Devere*, dismiss the meritless unfair competition counterclaims, including the trademark dilution claims – see *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809 at *4 – here.

## II.   DEFENDANTS SEEK RELIEF FOR, BUT HAVE FAILED TO PLEAD, A CLAIM FOR SECONDARY TRADEMARK LIABILITY.

Defendants base their unfair competition and trademark claims, in part, on the allegation that advertisements from their business competitors can be found on the Boarding School Review web pages dedicated to information about defendants' for-profit school businesses.  Fantastically – or, better, implausibly – they allege that consumers are "deceived" into the belief that these for-profit school businesses are "licensed from, or are officially sponsored or endorsed by, or are otherwise associated with," their (essentially unknown) for-profit for-profit school businesses. [*See*, e.g., Counterclaim ¶ 47.]  Defendants pretend not to be aware of that any consumer using the Internet is aware of the obvious fact, evident from the printouts of the websites mailed to BSR, that these are independent advertisements or promotions generated by, for example, Facebook, Google Ads and other third parties. [*See*, e.g., Complaint Exhibit A.]  But defendants, not pretending at all but evidently failing to understand their own trademark claims, ignore the fact that they are based on the imposition of **secondary** liability for trademark infringement by third parties not named in this action.  As demonstrated below, even if defendants had met the *prima facie* requirement that such a claim be premised on a cognizable primary infringement claim – which, as demonstrated above, they clearly do not – their de facto claims of secondary trademark infringement also fail as a matter of law.

Claims for direct and contributory trademark infringement are legally and factual distinct. *See Steinway, Inc. v. Ashley*, 01 CIV 9703 GEL, 2002 WL 122929 (S.D.N.Y. Jan. 29, 2002) *citing Inwood*

16

*Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 853-54 (1982); *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 64 (2d Cir. 1992). Contributory trademark infringement requires the satisfaction of separate elements in determining liability, namely, that "a defendant either **intentionally induces** a third party to infringe the defendants' mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe that mark." *Id.* (emphasis added). To find contributory infringement on an Internet website, defendants must allege both that BSR directly controlled and monitored the activities of the infringing website – i.e., the sites of the competing for-profit school businesses – and that BSR had knowledge of the infringement. *Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F.Supp.2d 678 (D. Md. 2001). *See*, Coleman, Jane, *Secondary Trademark Infringement*, http://www.secondarytrademark_infringement.com/?p=91   (last visited October 10, 2011).   This defendants fail to do.

In fact, there can be no secondary liability for trademark infringement without at least an allegation of direct trademark infringement by someone.  *See, Sony Computer Entertainment America, Inc. v. GameMasters*, 87 F.Supp.2d 976, 986 (N.D. Cal. 1999) (preliminary injunction based on contributory infringement denied given "scant evidence and allegations" of direct trademark infringement); *Lockheed Martin Corp. v. Network Solutions, Inc.* 985 F.Supp.949, 964-965 (C.D. Cal. 1997), *aff'd* , 194 F.3d 980 (9th Cir. 1999) ("Contributory infringement doctrine has always treated uncertainty of infringement as relevant to the question of an alleged contributory infringer's knowledge[").

Given that defendants has made no counterclaim sounding in contributory trademark infringement, including any allegation of trademark infringement by the parties operating the third-party websites to which consumers are allegedly "diverted" via the Community College Review website, this alone merits dismissal of its claims based on so-called "diversion."   As the court in *Ascentive* explained:

> Put simply, plaintiffs are unlikely to succeed on any contributory infringement claim against PissedConsumer because they do not sufficiently allege, let alone make, such a claim in their complaints. Where a plaintiff's claims cannot survive a motion to dismiss, they fail a fortiori to establish a likelihood of success on the merits.
>
> Plaintiffs' complaints contain allegations regarding third-party advertisements on PissedConsumer's website. . . .  But the complaints contain no allegations, as they must, that pertain to "the extent of control exercised by [PissedConsumer] over the third party's means of infringement" or that PissedConsumer was aware of 'specific instances of actual infringement" and continued to supply its service after it knew or should have known that it was being used to infringe plaintiffs' marks. Nor do the complaints contain any allegations regarding PissedConsumer's inducement of advertisers such as [third-part network advertising service] Chitika to infringe plaintiffs' marks. Indeed, plaintiffs' complaints contain no allegations regarding Chitika or its operation at all. Because plaintiffs have not alleged a claim of contributory trademark infringement sufficient to withstand a motion to dismiss, plaintiffs are unlikely to succeed on this claim.

842 F. Supp. 2d at 470-71 (citations and footnotes omitted).  Here, as in *Ascentive*, defendants have not alleged that the content of the ads on the Community College Review website is controlled or even materially affected by any action by BSR.  Even if they had, this would not amount to trademark infringement in connection with the reviews that do use the mark.  Absent even a *prima facie* trademark infringement claim against such third parties, no claim for contributory liability against defendants can lie here.

Neither can defendants proceed on a theory of vicarious infringement absent allegations of an agency relationship or a similar level of control by BSR.  "Absent an agency relationship, vicarious liability can only be imposed if the defendant and infringer 'exercise joint ownership or control over the infringing product.'" *Id.* at 549 (E.D. Va. 2010), citing *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 807 (9th Cir.2007).  No such allegation is found in the counterclaims, and for this reason, too, they fail as a matter of law to state claims for which relief can be granted arising out of trademark infringement, dilution or unfair competition.

As a related matter, defendants have also made a counterclaim under N.Y. Gen. Bus. Law §349, which prohibits "Deceptive acts or practices in the conduct of any business, trade or

commerce or in the furnishing of any service in this state."   It is well established that such state-law versions of the Lanham Act rise and fall based on the same standards, and this counterclaim should be dismissed for the reasons set forth Section I.  *See, Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006).  But with respect to secondary liability, or by close analogy to it, it is worth noting that this statute, by its own terms, exempts publishers, such as BSR, which merely carry advertisements of third parties, providing in subsection (e), "Nothing in this section shall apply to any television or radio broadcasting station or to any publisher or printer of a newspaper, magazine or other form of printed advertising, who broadcasts, publishes, or prints the advertisement."  To the extent that defendants counterclaims under §349 arise in connection with BSR's publication of third-party advertisements by defendants' competitors, §349(e) would negate any such liability.

## III.    DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.

Defendants' copyright claims are deficient as a matter of law, and readily amenable to dismissal under Fed. R. Civ. P. 12(b)(6), on numerous grounds, as set forth below.

### a.  BSR's use of defendants' copyrighted material was fair use

BSR's use of these copyrights is non-actionable because, as a matter of law, that use as alleged constitutes fair use under 17 U.S.C. § 107, which provides:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching ..., scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include -
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

Although an alleged infringer bears the burden of proving that its use was fair, it "need not establish that each of the factors set forth in § 107 weighs in their favor. Instead, all factors must be explored and the results weighed together in light of the purposes of copyright and the fair use defense." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476-77 (2d Cir. 2004) (citations and quotations omitted). That BSR's use of the copyrighted material constitutes "criticism, comment, news reporting, teaching ..., scholarship, or research" cannot seriously be disputed.  Community College Review encompasses almost every one of these functions.

Considering the specific statutory factors, BSR's use is clearly a fair use based on analysis under the "purpose and character of the use" and "effect of the use on the potential market for or value of the copyrighted work" prongs of section 107.   As to the latter, it should be clear that these copyrights have no commercial value at all, or defendants would not have waited years after publication before registering them.  More to the point, the copyrighted material defendants claim to have been infringed by BSR are entirely incidental to defendants' business, which is not brochure or website copywriting or video production but for-profit post-secondary education.  The Eastern District of New York, dismissing similarly specious copyright claims on fair use grounds in *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188 (E.D.N.Y. 2007), explained as follows:

> The last statutory factor [in copyright statutory analysis] is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The question here is whether the secondary use usurps the market of the original work.  [Plaintiff] AG is a manufacturer of tanning products, not label artwork. The only market that [defendant] S&L's conduct potentially usurps is sale of the Products by salons. This market, however, is not the focus of the final factor; the focus is on the market for the copyrighted artwork. Accordingly, this factor weighs in favor of S&L's use. . . .

> As noted, this claim is not the typical copyright infringement claim. Rather, it seems as though AG is attempting to force a claim with facts that do not really fit. S&L puts photographs of AG's Products, including AG's copyrighted artwork, on its Website in order to sell AG's Products at a discounted price. S&L then places its logos and trade names on or near the images of the Products and "All Rights Reserved" directly beneath the images. Considering the statutory factors discussed in detail above and the facts of this case, the Court finds that the "copyright law's objective to promote the Progress of Science and useful Arts" would not be undermined by S&L's conduct. As such, the Court finds that S&L has engaged in fair use of AG's copyrighted artwork.

521 F. Supp. 2d at 215 (citations and internal quotations omitted); *citing Castle Rock Entm't v. Carol Publ'g Group,* 150 F.3d 132, 146 (2d Cir.1998). Here, too, defendants' copyright claims are an attempt "to force a claim with facts that do not really fit" – a transparent extension of an attempt to abuse the intellectual property laws to achieve a socially and constitutionally repugnant goal – the censorship of Community College Review with respect to their businesses.  This is not the purpose of the Copyright Act.

The other fair use factors, other than the non-dispositive issue of whether or not the use is commercial (it is), favor BSR as well.  Fundamentally, defendants complain that BSR has copied defendants' own promotional materials to describe their own goods and services on Community College Review.  This fact itself is a red flag indicating disingenuousness – businesses with something to sell typically are delighted to have others disseminate their own self-serving ad copy and media content – but is also a classic transformative, and permissible, use under these facts. *See*, e.g., *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004) ("We agree with the district court that the websites' use of quotations from the manual to support their critical analyses of the seminars is transformative").

For these reasons, defendants' copyright counterclaims should be dismissed on fair use grounds.

21

### b.   Defendants' copyright registrations are deficient

The Complaint in this action was filed on December 7, 2011; the First Amended Complaint, on June 15, 2012.   Both sought a declaratory judgment of non-infringement of defendants' copyrights.   In their counterclaims for copyright infringement – which seek both actual and statutory damages and attorneys' fees – defendants include certificates of copyright registration for those same copyrights.   They are dated, respectively, effective June 12, 2012 (Exhibit 2 to the Answer and Counterclaims), June 8, 2012 (Exhibit 3 to the Answer and Counterclaims) and May 17, 2012 (Exhibit 5 to the Answer and Counterclaim).   Each one lists a date of publication two or more years prior to the registration date.   Defendants seek statutory damages and attorneys' fees under the Copyright Act.

Section 412 of the Copyright Act,[3] however, prohibits recovery of statutory damages for any work unless the work was registered (a) before the infringement commenced or (b) within three months after its first publication – neither of which occurred here. As a matter of law, defendants would not be entitled to statutory damages and attorneys' fees if they had valid claims here because their copyrights were not timely registered – and this despite claiming a right to them in cease and desist letters sent since 2010.

---

[3] 17 U.S.C. § 412 states in pertinent part:
   **Registration as prerequisite to certain remedies for infringement**
   In any action under this title, other than an action ... instituted under section 411(c), no award of statutory damages ... shall be made for-
   (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
   (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

    **c.**   **Defendants' waived any claim for unauthorized use of their video content by uploading it on YouTube**

The foregoing legal grounds for dismissal of defendants' copyright claims are more than sufficient, but in closing, the Court should appreciate just how desperate and cynical these counterclaims are in light of the following extraordinary facts. Among defendants' claims is that BSR infringed their copyright by placing their videos on Community College Review's site. But these videos – as defendants' readily acknowledged in the bluster of their November 23, 2011 cease and desist letter – were placed by defendants themselves on YouTube. [See Exh. C to First Amended Complaint.] But it is a matter of common knowledge that essentially every video on YouTube provides users with the ability to "embed" that video on their own website – i.e., to do exactly what BSR is accused of here. And the right to do just that is **granted to every YouTube user**, as provided by its Section 6(C) of YouTube's terms of use:

> For clarity, you retain all of your ownership rights in your Content. However, by submitting Content to YouTube, you hereby grant YouTube a worldwide, non-exclusive, royalty-free, sublicenseable and transferable license to use, reproduce, distribute, prepare derivative works of, display, and perform the Content in connection with the Service and YouTube's (and its successors' and affiliates') business, including without limitation for promoting and redistributing part or all of the Service (and derivative works thereof) in any media formats and through any media channels. **You also hereby grant each user of the Service a non-exclusive license to access your Content through the Service, and to use, reproduce, distribute, display and perform such Content as permitted through the functionality of the Service and under these Terms of Service.** The above licenses granted by you in video Content you submit to the Service terminate within a commercially reasonable time after you remove or delete your videos from the Service. You understand and agree, however, that YouTube may retain, but not display, distribute, or perform, server copies of your videos that have been removed or deleted. The above licenses granted by you in user comments you submit are perpetual and irrevocable.

YouTube Terms of Service, found at http://www.youtube.com/t/terms (last visited August 8, 2012.)

It should go without saying that all defendants' counterclaims based on "infringement" of its YouTube videos by virtue of BSR's embedding were contractually waived before they were even

filed.  But what is far more troubling is that they were not only threatened to be brought, however baselessly, but even filed in this Court with defendants' full knowledge of just how meritless they are.

### CONCLUSION

For the foregoing reasons, plaintiff / counterclaim defendant Boarding School Review, LLC respectfully requests that this Court dismiss the counterclaims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

GOETZ FITZPATRICK LLP

By: _____
     RONALD D. COLEMAN (RC 3875)

Marcus A. Nussbaum (MN 9581)
One Penn Plaza—Suite 4401
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
mnussbaum@goetzfitz.com
*Attorneys for Plaintiff*
*Boarding School Review, LLC*

Dated:  August 9, 2012

24