**DUANE MORRIS** LLP
R. Terry Parker
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Facsimile: 212.692.1020

and

Keith Zakarin (*pro hac vice*)
Michelle Hon Donovan (*pro hac vice*)
Heather U. Guerena (*pro hac vice*)
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619.744.2200

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARDING SCHOOL REVIEW, LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| DELTA CAREER EDUCATION CORPORATION, WESTON EDUCATIONAL, INC., BERKS TECHNICAL INSTITUTE, INC., MCCANN EDUCATION CENTERS, INC., MILLER-MOTTE BUSINESS COLLEGE, INC., SOUTHWEST BUSINESS COLLEGES, INC., and THE MIAMI-JACOBS BUSINESS COLLEGE CO., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| DELTA CAREER EDUCATION CORPORATION, et al. | ) ) ) |
| Cross-Claimants, | ) ) |
| v. | ) |
| BOARDING SCHOOL REVIEW, LLC, | ) ) |
| Cross-Defendant. | ) |

CIVIL ACTION NO. 11 Civ. 8921 (DAB)

**ECF Case**

**OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS ........................................................................................1

    I.    Cross-Claimants................................................................. 1

    II.    BSR's Infringing Lead Generation Website. ....................... 3

ARGUMENT ...........................................................................................................5

    I.    It is Premature to Rule on BSR's Nominative Fair Use Defense. ......................... 6

    II.    BSR's Use of Cross-Claimants' Marks on Its Lead Generation Website Does Not Constitute Nominative Fair Use. ......................................................... 8

        A.    BSR is Using Marks To Confuse Customers and Collect Internet Leads. . 8

        B.    BSR's Website Suggests Source, Sponsorship and/or Endorsement.......... 9

    III.    Cross-Claimants Have Alleged Sufficient Facts to Support its Trademark Claims. ................................................................................................ 10

    IV.    Cross-Claimants  Have Sufficiently Stated a Claim for Copyright Infringement.......................................................................................... 13

        A.    It is Premature to Rule on BSR's Copyright Fair Use Defense................ 13

        B.    BSR's Wholesale Copying of Cross-Claimants' Works on its Commercial Website Does Not Constitute Copyright Fair Use.................................... 14

            1.    BSR Admits Its Use is a Commercial in Nature............................14

            2.    The Website Significantly Devalues Delta's Copyrighted Work. ............................................................................................15

        C.    Cross-Claimants Have Sufficiently Alleged Facts to Support Its Damages Claims. .................................................................................................. 16

        D.    YouTube Terms of Service Prohibits Use on BSR's Website.................. 17

CONCLUSION.......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*
414 F.3d 400 (2d Cir. 2005)...............................................................................11

*Ascentive, LLC v. Opinion Corp.*
842 F. Supp. 2d 450 (E.D.N.Y. 2011) ................................................................12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009).............................................................................................5

*Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*
2008 U.S. Dist. LEXIS 109800 (N.D. Cal. Dec. 18, 2008)................................6

*Baker v. Pataki*
85 F.3d 919 (2d Cir. 1996)..................................................................................5

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007).......................................................................................5, 17

*Black v. Coughlin*
76 F.3d 72 (2d Cir. 1996) ...................................................................................6

*Campbell v. Acuff-Rose Music*
510 U.S. 569 (1994)...........................................................................................15

*Cintas Corp. v Unite Here*
601 F.Supp.2d 571 (S.D.N.Y 2009).....................................................................7

*Day v. Moscow*
955 F.2d 807 (2d Cir. 1992)................................................................................6

*Dever Group GMbH v. Opinion Corp.*
2012 WL 2884986 (E.D.N.Y. July 13, 2012)....................................................12

*Devere Group GMBH v. Opinion Corp.*
2012 U.S. Dist. LEXIS 97812 (E.D.N.Y. 2012)..................................................7

*Elec. Arts, Inc. v. Textron Inc.*
2012 U.S. Dist. LEXIS 103914 (N.D. Cal. July 25, 2012)..................................6

*Festa v. Local 3 Int'l Bhd. of Elec. Workers*
905 F.2d 35 (2d Cir. 1990).................................................................................17

*First Nationwide Bank v. Gelt Funding Corp.*
27 F.3d 763 (2d Cir. 1994)..................................................................................5

*Harper & Row Publishers, Inc. v. Nation Enters.*
 471 U.S. 539 (1985)..................................................................................14

*Kahn v. Kohlberg, Kravis, Roberts & Co.*
 970 F.2d 1030 (2d Cir. 1992) ....................................................................6

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*
 2012 U.S. Dist. LEXIS 83646 (S.D.N.Y. Jun. 15, 2012) ..........................7

*Mkt. Studies, LLC v. Tech. Analysis, Inc.*
 2012 U.S. Dist. LEXIS 42418 (D. Ariz. Mar. 28, 2012) ...........................7

*Nabisco, Inc. v. Warner-Lambert Co.*
 220 F.3d 43 (2d Cir. 2000)........................................................................11

*New Kids on the Block v. News America Publishing*
 971 F.2d 302 (9th Cir. 1991) .................................................................8-9

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*
 166 F.3d 65 (2d Cir. 1999)........................................................................15

*Panavision Int'l, L.P. v. Toeppen*
 141 F.3d 1316 (9th Cir. 1998) ..................................................................13

*Polaroid Corp. v. Polarad Elec. Corp.*
 287 F.2d 492 (2d Cir. 1961)......................................................................11

*Powerlineman.com, LLC v. Jackson*
 2007 U.S. Dist. LEXIS 86261 (E.D. Cal. Nov. 15, 2007) .........................6

*Sony Corp. of Am. v. Universal City Studios, Inc.*
 464 U.S. 417 (1984).............................................................................14-15

*Swatch Group Mgmt. Servs. v. Bloomberg L.P.*
 808 F.Supp.2d 634 (S.D.N.Y. 2011).........................................................14

**Federal Statutes**

15 U.S.C. § 1114........................................................................................10

15 U.S.C. § 1125(a) ...................................................................................10

The Copyright Act, 17 U.S.C. § 101 et seq. .............................................13

17 U.S.C. § 106...........................................................................................13

17 U.S.C. § 107...........................................................................................13

17 U.S.C. § 501...........................................................................................13

**Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) .................................................................... 5-6

**Treatises**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11 (2008)............9

Defendants and cross-claimants Delta Career Education Corporation, Berks Technical Institute, Inc., Career Training Specialists, Inc., McCann Education Centers, Inc., Miller-Motte Business College, Inc., Southwest Business Colleges, Inc., and the Miami-Jacobs Business College Co. (collectively "Delta"), and Weston Educational, Inc. ("Heritage") (collectively, "Cross-Claimants"), by their undersigned attorneys Duane Morris LLP, hereby submit their opposition to plaintiff Boarding School Review, LLC's ("BSR") Motion to Dismiss.

## INTRODUCTION

BSR is attempting to use its Motion to Dismiss to obtain summary judgment on its own declaratory relief claims and fair use affirmative defenses.  This is an inappropriate vehicle to obtain judgment on such factually intensive issues.  BSR does not argue that Cross-Claimants have failed to meet the minimum pleading standards for the causes of action set forth in the Cross-Complaint.  Instead, BSR argues that the counterclaims should be dismissed as a matter of law in light of BSR's fair use affirmative defenses.  Such defenses cannot support grounds for dismissal at the pleading stage.  The issue of fair use is extremely factual and must be examined on a case-by-case basis, which is why courts routinely refuse to decide such issues at the pleading stage.  Furthermore, BSR's unauthorized copying and trademark usage to profit from Internet leads and click through advertisements does not qualify as fair use.

## STATEMENT OF FACTS

### I.  <u>Cross-Claimants</u>

The Cross-Claimants operate in the private postsecondary school sector.  Counterclaim ¶¶ 14, 29.  This education sector serves the growing need for career-oriented education in the new service economy.  *Id.*  Delta operates over 37 campuses providing education services to over 16,000 students ("Delta Schools").  *Id.* at ¶ 17.  The Delta Schools offer associate degree and diploma programs in fields with high employer demand, including healthcare, information

technology and business.  *Id.* at ¶ 14.  Delta provides its educational goods and services under

the following trademarks, which are hereinafter referred to as the "Delta Marks":

- ACADEMY OF COURT REPORTING
- ACADEMY OF COURT REPORTING TECHNOLOGY
- ACRT
- BERKS TECHNICAL INSTITUTE
- BTI
- MILLER-MOTTE
- MILLER-MOTTE COLLEGE
- MILLER-MOTTE TECHNICAL COLLEGE
- TUCSON COLLEGE
- INSTITUTE FOR BUSINESS AND TECHNOLOGY
- IBT
- MCCANN SCHOOL OF BUSINESS AND TECHNOLOGY
- LAMSON COLLEGE
- LAMSON INSTITUTE
- MIAMI-JACOBS CAREER COLLEGE
- NATIONAL CAREER EDUCATION
- NCE

*Id.* at ¶ 17.  Delta markets the Delta Schools primarily through promotional videos and websites

for each of the Delta Schools.  *Id.* at ¶ 23.  For example, the website located at the URL

http://www.miller-motte.edu [the "MMTC Website"] is used to market and promote Miller-

Motte College.  *Id.* at ¶ 24; Request for Judicial Notice ("RJN") Exhibit A.[1]

     Heritage operates eight postsecondary schools that offer a variety of degree programs in

the healthcare field ("Heritage Schools").  Counterclaim ¶ 29.  Heritage Schools have campuses

in Arkansas, Colorado, Florida, Kansas, Missouri, Oklahoma and Virginia.  *Id.*  These schools

also provide associate degree and diploma programs in the healthcare field, including X-Ray

medical technician, medical assistant, massage therapist, healthcare administrator, esthetician,

---

[1]     URLs to various webpages are referenced throughout the Counterclaim.  Additionally, screen shots and web page print outs are also included as Exhibits to the Complaint but are poor quality copies.  Exemplary pages from these websites are submitted herewith in Cross-Claimants' Request for Judicial Notice.

surgical technologist, dental assistant, personal training, and pharmacy technician.  *Id.*  For over three decades, Heritage has offered its education services in connection with the trademarks HERITAGE INSTITUTE, HERITAGE COLLEGE and HERITAGE EDUCATION (hereinafter "Heritage Marks").  *Id.* at ¶ 30.  Heritage markets the Heritage Schools primarily through promotional videos and its website.  *Id.* at ¶ 33.  For example, the website located at the URL http://www.heritgae-education.com [the "Heritage Website"] is used to market and promote the Heritage Schools.  *Id.* at ¶ 34; RJN Exhibit B.

Both Cross-Claimants rely on Internet leads as a source of new student enrollments.  By way of background, a "lead" is information that is gathered from a potential student who is interested in attending a particular college or program.  Schools in the private postsecondary sector rely on leads to enroll new students.  The leads are gathered through lead forms that prospective students fill out on the school website.  These lead forms typically offer to provide additional information regarding admission to the program of interest.  The lead form requests basic contact information such name, address, phone number, email address and program of interest.  In order to increase their number of leads, postsecondary schools will often hire third party companies known as "lead generators" that specialize in gathering and selling Internet leads.  The lead generators operate their own websites, which contain pre-approved marketing material for each school and a lead form where prospective students can request more information about admission to the program of interest.  Both the MMTC Website and Heritage Website contain lead forms prominently on the home page.  RJN Exhibits A and B.

## II.    BSR's Infringing Lead Generation Website.

BSR owns and operates the Internet website called Community College Review, found at the URL www.communitycollegereview.com (the "BSR Website").  Counterclaim ¶ 39; Complaint ¶ 7.  While BSR claims that it merely provides "free detailed profiles of community

colleges" (Complaint ¶ 7), it is abundantly clear that BSR is in the education marketing

business.  Specifically, BSR is a lead generator that earns revenue selling leads and click through

advertising to the private postsecondary school sector.  Counterclaim ¶¶ 60, 63-64.  When a user

searches for information about the Heritage Schools or Delta Schools, the user is directed to a

web page where users are prompted to obtain admissions information through a lead form.  RJN

Exhibits C and D; *see also* Complaint Exhibits A and C.  For example, when visiting the Miller-

Motte College page for the school located in Cary North Carolina on the BSR Website, users are

prompted to "Get Admissions Info on Miller-Motte Technical College, Cary."  RJN Exhibit C;

*see also* Complaint Exhibit A.  Towards the bottom of the page there is also a link to "Request

Info:  Get info / application from Miller-Motte College-Cary."  *Id.*  Similarly, the web page for

Heritage College in Oklahoma City includes a lead form that prompts the user to "Get

Admission Info on Heritage College, Oklahoma City."  RJN Exhibit D; *see also* Complaint

Exhibit C.  Towards the bottom of the web page there is another link to "Request Info:  Get info /

application from Heritage College-Oklahoma City."  *Id.*  Neither Heritage nor Delta receive any

leads that are completed on the BSR Website.  Upon information and belief, BSR sells or

remarkets those leads to schools that are in direct competition with Cross-Claimants.

Counterclaim ¶¶ 60, 65.

    In addition to these lead forms, the BSR Website pages prominently display the Cross-

Claimants trademarks and copyrighted content.  Each page displays the trademark name of the

relevant school at the top of the page.  RJN Exhibits C and D; Complaint Exhibits A and C.  To

the right of that, BSR displays a copy of the Cross- Claimants' home page in its entirety, which

also includes the school logos.  *Id.*  The "School Notes Overview" section contains a description

of the school and is copied directly from the Cross- Claimants' own website.  *Id.*  Additionally,

promotional videos appear further down the page using an embedded viewer so the user can view the video from the BSR Website instead of from the Cross-Claimants' own website or YouTube page.  Complaint ¶ 18, Exhibits A and C.

In addition to the revenue BSR receives from Delta and Heritage leads, BSR also receives revenue for click through advertisements found in three separate locations on each web page:  (1) immediately under the Cross-Claimants' trademarks at the top of the page; (2) in the web page frame on the right side of the page under the copy of the school website, and (3) at the bottom of the page in a "Featured Partners" section.  RJN Exhibits A and B; Complaint ¶ 8; Exhibits A and C.

## ARGUMENT

BSR's Motion to Dismiss should be denied.  Cross-Claimants have alleged sufficient facts to support their claims.  That is all that is required.  To survive a motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *accord Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  For Rule 12(b)(6) purposes, the Court must accept the plaintiff's factual allegations as true.  *Baker v. Pataki*, 85 F.3d 919, 922 (2d Cir. 1996); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) ("the well-pleaded material allegations of the complaint are taken as admitted").  BSR does not claim that Cross-Claimants failed to allege sufficient facts to support their claims.  Rather, BSR claims that its fair use affirmative defenses defeat the counterclaims as a matter of law.  BSR has not and cannot establish any of its affirmative defenses as a matter of law.  Therefore, this Motion must be denied.

I.      **It is Premature to Rule on BSR's Nominative Fair Use Defense.**

BSR claims that Cross-Claimants' trademark infringement and unfair competition claims should be dismissed in light of its nominative fair use defense.  BSR's unauthorized use of Cross-Claimants' trademarks does not constitute fair use.  However, it is premature for the Court to decide this issue at the pleading stage due to the intense factual nature of this affirmative defense.

For an affirmative defense to form the basis for a Rule 12(b)(6) dismissal, all necessary elements must appear on the face of the complaint.  *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (defense of res judicata may be upheld on Fed. R. Civ. P. 12(b)(6) motion without requiring answer); *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir. 1992) (because complaint and attached exhibits showed that statute of limitations had run, the court did not have to look beyond the pleadings to dismiss under Fed. R. Civ. P. 12(b)(6)).  However, defenses such as fair use that require a factual review to be established, cannot support a dismissal for failure to state a claim.  *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996) (qualified immunity may not always be established as matter of law).  Because of its factual nature, Courts almost always decline to consider the nominative fair use defense at the pleadings stage as it is premature.  *See e.g. Elec. Arts, Inc. v. Textron Inc.*, 2012 U.S. Dist. LEXIS 103914 (N.D. Cal. July 25, 2012) (Nominative fair use analysis typically involves questions of law and fact, and determination on a motion to dismiss is premature); *Autodesk, Inc. v. Dassault Systemes Solidworks Corp.*, No. C 08-04397 WHA, 2008 U.S. Dist. LEXIS 109800 at * 12 (N.D. Cal. Dec. 18, 2008) ("analysis of nominative fair use is premature on a motion to dismiss, particularly given the factual nature of the inquiry in this case"); *powerlineman.com, LLC v. Jackson*, No. CIV. S-07-879 LKK/EFB, 2007 U.S. Dist. LEXIS 86261 at *13 (E.D. Cal. Nov. 15, 2007) (analysis of classic fair use and nominative fair use is premature on a motion to dismiss,

particularly given their factual nature); *Mkt. Studies, LLC v. Tech. Analysis, Inc.*, No. CV-11-1895-PHX-JAT, 2012 U.S. Dist. LEXIS 42418 at * 8 (D. Ariz. Mar. 28, 2012).

Courts have only decided the issue of fair use at the pleadings stage where it is clear from the face of the complaint that there is no possible way for consumers to be confused as to the source, sponsorship or endorsement of the goods or services at issue.  Courts may make an exception "where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc*., 11 CIV. 9436 ALC HBP, 2012 U.S. Dist. LEXIS 83646, 2012 WL 2248593, at *8 (S.D.N.Y. Jun. 15, 2012) (citing cases).  One such exception applies to use of trademarks on "gripe sites," which were subject to dismissal in the cases cited by BSR.  *Cintas Corp. v Unite Here*, 601 F.Supp.2d 571 (S.D.N.Y 2009) (use of CINTAS marks on grip website cintasexposed.org to disparage Cintas is not likely to cause any confusion about who provides CINTAS goods and services); *Devere Group GMBH v. Opinion Corp.*, 2012 U.S. Dist. LEXIS 97812 (E.D.N.Y. 2012) (consumers are not likely to mistakenly believe Devere sponsored or approved negative commentary about Devere on the grip site pissedconsumer.com).  Unlike the BSR Website, gripe websites such as www.cintasexposed.com and www.PissedConsumer.com are clear on their face that they are not sponsored or associated with the trademark owner.  There is no likelihood that a consumer visiting these websites, which openly criticize the trademark owner, would mistakenly believe that trademark owner sponsored or approved the critical contents of those websites.

Conversely, BSR's website is not a gripe site.  It is a lead generation website that directly competes with Cross-Claimants' official websites to obtain Internet leads for potential new

7

students.  Thus, it does not fall within the grip site exception to the general rule that nominative fair use defenses should not be decided at the pleading stage.

## II.    BSR's Use of Cross-Claimants' Marks on Its Lead Generation Website Does Not Constitute Nominative Fair Use.

The issue of whether BSD's use is nominative fair use should not be decided at this stage in the litigation.  However, if the Court does rule on this issue, it must find that BSD's use does not constitute nominative fair use.

### A.    BSR is Using Marks To Confuse Customers and Collect Internet Leads.

As an initial matter, the nominative fair use doctrine does not apply because BSR is not merely using Cross-Claimants' marks to describe their respective goods and services.  Instead BSR is using these marks to misdirect Internet users from Cross-Claimants' official websites for the purpose of acquiring Internet leads and click through advertising revenue.  The nominative fair use defense is available only if "the use of the trademark *does not* attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids on the Block v. News America Publishing,* 971 F.2d 302, 308 (9th Cir. 1991) (emphasis added). Here BSR is intentionally misdirecting and misleading prospective students who are interested in attending one of the Delta or Heritage Schools in order to redirect and remarket prospective students to competitor schools.

BSR is in the education marketing business, specifically focusing on increasing enrollment by generating Internet leads through the BSR Website.  Through its website, BSR purports to provide information about various higher education institutes.  Each web page provides the option for potential students to fill out a lead form where potential students can "Request Admissions Info" about the school of interest, stating that BSR will provide admissions information about the Delta and Heritage Schools to the prospective student.  BSR does not

actually provide admissions information and does not send the lead to the relevant Delta or Heritage School.  Instead, it resells or remarkets that lead to Delta's and Heritage's direct competitors.  Thus, nominative fair use does not apply because BSR's use of the Delta and Heritage Marks is an attempt to capitalize on consumer confusion and appropriate Internet leads from Cross-Claimants.  *New Kids on the Block, supra*; *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11 (2008) (nominative fair use creates no likelihood of confusion).

**B.     BSR's Website Suggests Source, Sponsorship and/or Endorsement.**

The BSR Website clearly implies source, sponsorship and/or endorsement by Cross-Complaints and intentionally capitalizes on consumer confusion.  Therefore, it is likely to cause confusion under the nominative fair use doctrine.  Use that implies source, sponsorship or endorsement by the trademark holder is likely to cause confusion under the nominative fair use doctrine.  *New Kids on the Block v. News America Publishing* 971 F.2d at 308.

The BSR Website is specifically designed to give the impression that the information found on the website is provided by, sponsored and/or endorsed by the respective colleges.  There are numerous tricks that BSR uses to give this mistaken impression.  First, the inclusion of the lead form with the offer to provide admissions information for these schools strongly implies sponsorship or endorsement by schools.  BSR's use of the information submitted by a prospective student is even more confusing and misleading because BSR sells the student's information to schools and companies that are completely unrelated to the Delta or Heritage school that the student expressed an interest in.  Additionally, the use of Cross-Claimants' copyrighted materials, including the image of its web page, promotional videos and other content stolen from the official school website, further suggests that Delta and Heritage is the source of

9

or has sponsored or endorsed these web pages.  For example, the following content in the

Heritage School Notes Overview appears to have been copied from one of Heritage's webpages:

> The Oklahoma City Heritage College massage school recognizes massage therapy as a modern medical discipline. Our massage school teaches therapeutic massage as a profession. Our Oklahoma City, Oklahoma massage school emphasizes a broad variety of therapeutic massage skills. Our Associate of Occupational Studies (AOS) degree curriculum at the Heritage massage therapy school will include training in therapeutic massage treatment plans, applied techniques, assessment, anatomy, physiology, sports massage, neuromuscular, musculoskeletal, and business mastery. In Oklahoma, our Oklahoma City massage school emphasizes Swedish massage, Asian massage, Japanese massage, and Chinese medicine. At the Heritage College Oklahoma City massage school, we prepare our massage therapy students for careers and jobs working in spas, cruise ships, clinics, fitness centers, hospitals, wellness centers, doctor's offices, corporations, professional sports organizations, and private practices.

Complaint Exhibit C; RJN Exhibit B.  The fact that this language comes directly from Heritage

and includes self-referencing pronouns to describe the school gives the overall impression that

the school information is provided by the school itself.  Thus, further lending to the mistaken

impression that these web pages are sourced from, sponsored by and/or endorsed by the Cross-

Claimants.  The BSR Website suggests source, sponsorship and/or endorsement and is

intentionally designed to capitalizes on consumer confusion.  Therefore, BSR has no nominative

fair use defense.

## III.    Cross-Claimants Have Alleged Sufficient Facts to Support its Trademark Claims.

Cross-Claimants have alleged sufficient facts to support their trademark infringement

claims.  To establish a trademark infringement claim under 15 U.S.C. § 1114 for a registered

trademark or under 15 U.S.C. § 1125(a) for an unregistered trademark, a plaintiff must establish:

(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the

defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of

goods or services, (5) without the plaintiff's consent, and (6) that defendant's use of that mark is

likely to cause confusion as to the affiliation, connection, or association of defendant with

plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by plaintiff.  *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005).  The first five elements are undisputed.  Cross-Claimants have alleged and BSR does not dispute, that they own numerous valid marks and registrations for the Delta Marks and Heritage Marks.  It is also undisputed that BSR is using the Delta and Heritage Marks on its website in connection with advertising its services, without Cross-Claimants' consent.  The only issue is whether Cross-Claimants have sufficiently alleged facts to support a plausible claim that this use is likely to cause confusion.  They have.

In assessing the last factor, the likelihood of confusion, courts consider the following eight factors: (1) strength of the senior user's mark; (2) degree of similarity between the marks; (3) competitive proximity of the product; (4) likelihood that the senior user will bridge the gap; (5) evidence of actual confusion; (6) defendant's bad faith; (7) the quality of defendant's product; and (8) sophistication of the relevant group.  *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  "[T]he evaluation of the Polaroid factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins.  Rather a court should focus on the ultimate question of whether consumers are likely to be confused."  *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45-46 (2d Cir. 2000).  Here, prospective students are likely to be confused as to the source, sponsorship or affiliation of BSR's services.  BSR offers to provide information about Cross-Claimants' schools.  Prospective students who arrive at the BSR Website will believe that by submitting their contact information through the "Get Admissions Info" lead form will result in them actually receiving admissions information for the school that they are interested in.  Instead that lead is remarketed or resold to Cross-Claimants' competitors.  Furthermore, prospective students are also likely to believe that the information

11

contained in the BSR Website regarding the Weston and Delta Schools comes from Cross-Claimants, when it does not.  The prospective student never receives the information and the Cross-Claimants never receive the lead.  This is more than sufficient at the pleading stage to support a plausible claim for trademark infringement.

The cases cited by BSR, *Dever Group GMbH v. Opinion Corp.*, 2012 WL 2884986 (E.D.N.Y. July 13, 2012) and *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 463 (E.D.N.Y. 2011), are inapplicable because they both relate to the same "grip site" where there is no reasonable chance that consumers are likely to believe that the trademark owner sponsors or endorses negative criticism.  Moreover, unlike the facts in *DeVere,* BSR is directly competing with Cross-Claimants for Internet leads.  Heritage and Delta are both competing with BSR to attract students to their respective websites to garner leads.  Indeed, the respective websites look very similar in that the pages provide information about the school or program and provide a lead form for the user to fill out to request information.  Compare RJN Exhibits A and B with Exhibits C and D.  However, if the user fills out the lead form on the BSR Website then Delta and Heritage lose the opportunity to enroll that user.

Further, while there may be some initial interest confusion happening in connection with the BSR Website, Cross-Claimants do not need to rely on this theory of confusion in light of the actual confusion that likely occurs.  Initial interest confusion refers to a phenomena where Internet users are diverted from the official website to a competitors website.  Generally, once they arive at the competitor's website, there is no likelihood of confusion that the website is sponsored, endorsed or affiliated with the trademark owner.  However, once there the damage is done because, not having found the official website, the user may become discouraged and give up looking for the trademark holder's website or be distracted by the competitor's website.  *See*

*e.g. Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998). This case is much worse. Upon arriving at the BSR Website, it is not clear that this is a competitor website. Instead, the BSR Website appears to be sponsored, endorsed or affiliated with the Cross-Claimants. Moreover, having successfully submitted a request for information about a Heritage School or Delta School on the BSR website, the user will have no motivation or reason to visit the official school website to fill out a second request for information because they are made to believe that their submission through the BSR Website is already going to Cross-Claimants when it does not.

Finally, BSR devotes an entire section of it Motion arguing that Cross-Claimants have failed to plead a claim for secondary trademark liability. Cross-Claimants do not need to state a claim for secondary trademark liability because BSR is directly infringing the Heritage and Delta Marks. Therefore, this argument has no relevance.

**IV.   Cross-Claimants  Have Sufficiently Stated a Claim for Copyright Infringement.**

**A.   It is Premature to Rule on BSR's Copyright Fair Use Defense.**

Under the Copyright Act, 17 U.S.C. § 101 et seq. There are only two elements to a claim of copyright  infringement: (1) copyright ownership and (2) violation of any of the exclusive rights of the copyright owner, which include reproduction and publication rights. 17 U.S.C. §§ 106, 501. Cross-Claimants have alleged and BSR does not dispute, ownership of valid copyrights and that BSR, without the permission or consent of Cross-Claimants, has copied and published these works on the BSR website. Instead BSR alleges that such copying and publishing is fair use under 17 U.S.C. §  107.

In determining whether the use of a copyrighted work is fair, a court is to evaluate and weigh as a whole all four factors set out in 17 U.S.C. § 107:

1.   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
2.   the nature of the copyrighted work;

3.      the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.      the effect of the use upon the potential market for or value of the copyrighted work.

This analysis is a mixed question of law and fact. *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 560 (1985). The "fairness" of a particular use is determined on a case-by-case basis, applying an "equitable rule of reason analysis." *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 448 (1984). Such intensive factual analysis usually cannot be determined at the pleading stage. *Swatch Group Mgmt. Servs. v. Bloomberg L.P.,* 808 F.Supp.2d 634, 641 (S.D.N.Y. 2011) ("Whether Bloomberg's use was a "fair use" is not a determination I can make after reviewing only the pleadings. I decline to address such a fact-intensive issue before the parties have had an opportunity for discovery."). Thus, it is premature to decide this issue at this time.

**B.      BSR's Wholesale Copying of Cross-Claimants' Works on its Commercial Website Does Not Constitute Copyright Fair Use.**

Should the court consider the issue of copyright fair use, it must find that BSR's use is not fair use. There is no dispute that the works at issue are entitled to copyright protection or that BSR copied the works in their entirety. Thus, the only issues before the Court are the commercial nature of the BSR Website and the effect of BSR's use on the value of the works at issue. Both factors favor finding no fair use.

1.      <u>BSR Admits Its Use is a Commercial in Nature.</u>

The Supreme Court has stated that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. v. Universal City Studios, Inc*., 464 U.S. 417, 451, (1984) (superseded by statute in part on other grounds as stated in *Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 2009); *see also Harper & Row, Publishers, Inc. v. Nation Enters*., 471 U.S.

539, 562 (1985) (citing Sony).   Here, BSR has admitted that its lead generation website is a commercial website.  Motion to Dismiss p. 21.  Therefore, the use of Cross-Claimants' works on this website is presumptively unfair and this factor heavily weighs in favor of finding no fair use.

2.   The Website Significantly Devalues Delta's Copyrighted Work.

The final factor also supports finding no fair use.  This factor poses the issue of whether unrestricted and widespread conduct of the sort engaged in by the defendant (whether in fact engaged in by the defendant or by others) would result in a substantially adverse impact on the potential market for, or value of, the work.  *Campbell v. Acuff-Rose Music,* 510 U.S. 569, 590 (U.S. 1994).  Where the copyrighted work is used for commercial gain, this harm is presumed. *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. at 451 (in order to negate fair use, there must be "proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work. Actual harm need not be shown; such a requirement would leave the copyright holder with no defense against predictable damage. Nor is it necessary to show with certainty that future harm will result. What is necessary is a showing by a preponderance of the evidence that some meaningful likelihood of future harm exists.").  BSR has admitted that its website is a commercial website.  Thus, the use of the works on the website is for commercial gain and this factor can be presumed.

Additionally, when a defendant's works compete in the same market and threaten to supersede plaintiff's works, this factor is clearly satisfied. *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.,* 166 F.3d 65, 73 (2d Cir. 1999).  Here, this element is clearly satisfied on this ground as well.  The value of website content is largely measured by how the website ranks in a search engine index such as Google.  BSR's website directly competes with Cross-Claimant's website for ranking in search engine indexes.  The works are significantly devalued because the

15

BSR's rampant use of these works is likely to be deemed duplicate content, which is penalized by search engine algorithms.

Duplicate content generally refers to substantive blocks of content within or across domains that either completely match other content or are appreciably similar. In cases where a search engine such as Google believes that duplicate content is used with intent to manipulate its rankings and deceive users, it will make appropriate adjustments in the indexing and ranking of the websites involved.  The Google support page explaining how its search algorithms treat duplicate content is found at
http://support.google.com/webmasters/bin/answer.py?hl=en&answer=66359.  RJN Exhibit E. As a result, the ranking of a website may suffer, or the website might be removed entirely from the Google index, in which case it will no longer appear in search results.  *Id.*  Thus, BSR's duplication of Delta's website content may be perceived by the search engine algorithms as duplicate content and can result in a lower search result ranking for the official school website or its complete removal from the search results.  This significantly deminishes the value of the works.

All four factors weigh in favor of Cross-Claimants.  Therefore, the Court should find that BSR's wholesale copying of the works on its commercial website do not constitute fair use.

**C.**    **Cross-Claimants Have Sufficiently Alleged Facts to Support Its Damages Claims.**

BSR alleges that the Copyright Registrations attached as exhibits to the Counterclaims do not support the remedy of statutory damages or attorneys' fees.  While these certificates were obtained after the infringement was discovery, that does not preclude Cross-Claimants from asserting a claim for statutory damages or attorneys' fees for any works that were registered before the infringement was discovered.  Cross-Claimants are not required to identify every

instance of infringement and ownership of every work at the pleading stage.  They are only required to state enough facts to raise a reasonable expectation that discovery will reveal evidence needed to support their claims.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)( ("Factual allegations must be enough to raise a right to relief above the speculative level. ... In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").  Cross-Claimants have plead sufficient facts to raise a reasonable expectation that discovery will reveal further evidence of infringing works and that that such infringement gives rise to liability for statutory damages and attorneys' fees.  Therefore, these damage claims should be maintained.

### D.     YouTube Terms of Service Prohibits Use on BSR's Website

Finally, BSR claims that its use of Cross-Claimants' promotional videos is authorized under the YouTube license.  The issue of whether Cross-Claimants have granted a license to all YouTube users is a disputed question of fact, which cannot be decided on a motion to dismiss.  Additionally, because the YouTube Terms of Service are not included in pleadings, considering such terms automatically converts this motion to a summary judgment motion.  *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 38 (2d Cir. 1990) (court's consideration of affidavits filed with motion to dismiss for lack of subject matter jurisdiction converted Fed. R. Civ. P. 12(b)(6) motion to motion for summary judgment).  Under the summary judgment standard, there is a material issue of fact as to whether the YouTube Terms of Service (a) grant a license to BSR to the videos made available on the YouTube website; (b) the scope of any alleged license and (c) whether BSR's use of the videos on its commercial website is expressly prohibited by the

17

YouTube Terms of Service.[2]  Thus, the Court cannot dismiss or enter judgment on the Copyright claim on this basis.

## CONCLUSION

For the reasons stated herein, Delta and Heritage respectfully request the Court deny BSR's Motion to Dismiss.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] The Terms of Service expressly prohibits use of videos on BSR's website.  Section 4(d) of YouTube's Terms states:

D.  You agree not to use the Service for any of the following commercial uses unless you obtain YouTube's prior written approval:
- the sale of access to the Service;
- the sale of advertising, sponsorships, or promotions placed on or within the Service or Content; or
- the sale of advertising, sponsorships, or promotions on any page of an ad-enabled blog or website containing Content delivered via the Service, unless other material not obtained from YouTube appears on the same page and is of sufficient value to be the basis for such sales.

18

DATED:  August 27, 2012

Respectfully submitted,

DUANE MORRIS LLP

By: _/s/Michelle Hon Donovan_____
Keith Zakarin (*pro hac vice*)
Michelle Hon Donovan (*pro hac vice*)
Heather U. Guerena (*pro hac vice*)
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619.744.2200

and

R. Terry Parker
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000
Facsimile: 212.692.1020

*Attorneys for Defendants/Counterclaim Plaintiffs*