## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**BOARDING SCHOOL REVIEW, LLC,**

    *Defendants,*

        *- vs. -*

**DELTA CAREER EDUCATION CORPORATION,** *et al.,*

    *Defendants.*

- - - - - - - - - - - - - - - - - - - - - -

**DELTA CAREER EDUCATION CORPORATION,** *et al.*

    *Counterclaim Plaintiffs,*

        *- vs. -*

**BOARDING SCHOOL REVIEW, LLC**

    *Counterclaim Defendant.*

CIVIL ACTION NO.

1:11-cv-08921-DAB

---

REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
TO DISMISS THE COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM FOR WHICH
RELIEF MAY BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Ronald D. Coleman (RC 3875)
Marcus A. Nussbaum (MN 9581)
**GOETZ FITZPATRICK LLP**
One Penn Plaza—Suite 4401
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
mnussbaum@goetzfitz.com
*Attorneys for Plaintiff*
*Boarding School Review, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................. 1

STATEMENT OF FACTS ..................................................... 1

LEGAL ARGUMENT ......................................................... 1

I. DEFENDANTS HAVE FAILED TO STATE
CLAIMS SOUNDING IN TRADEMARK
INFRINGEMENT OR UNFAIR COMPETITION ..................... 1

II. DEFENDANTS SEEK RELIEF FOR, BUT HAVE
FAILED TO PLEAD, A CLAIM FOR SECONDARY
TRADEMARK LIABILITY ................................................... 6

III. DEFENDANTS HAVE FAILED TO STATE A
CLAIM FOR COPYRIGHT INFRINGEMENT ..................... 7

CONCLUSION ............................................................... 10

## TABLE OF CASES

| CASES | PAGE |
| --- | --- |
| *Electronic Arts, inc. v. Textron, Inc.*, No. C 12-00118 WHA (N.D. Cal. July 25, 2012) | 2, 3 |
| *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 11 CIV. 9436 ALC HBP, 2012 WL 2248593 (S.D.N.Y. Jun. 15, 2012) | 2, 5 |
| *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) | 2 |
| *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir.1989) | 2 |
| *Syler v. Woodruff*, 610 F.Supp.2d 256, 266 (S.D.N.Y. 2009) | 3 |
| *Pirone v. MacMillian*, 894 F.2d 579, 584 (2d Cir.1990) | 3 |
| *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) | 3 |
| *Stewart Surfboards, Inc. v. Disney Book Group, LLC*, No. 10–cv–2982, slip. op. (C.D. Cal. May 11, 2011) | 3 |
| *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F.Supp.2d 625, 630 (S.D.N.Y.2008) | 3 |
| *Burnett v. Twentieth Century Fox Film Corp.*, 491 F.Supp.2d 962, 973 (C.D.Cal. 2007) | 4 |
| *Wham–O, Inc. v. Paramount Pictures Corp.*, 286 F.Supp.2d 1254 (N.D. Cal. 2003) | 4 |
| *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) aff'd, 355 F. App'x. 508 (2d Cir. 2009) | 4 |
| *Devere Group GmbH v. Opinion Corp.*, __ F.Supp.2d __ , 11-CV-3360 FB LB, 2012 WL 2884986 (E.D.N.Y. July 13, 2012) | 4 |
| *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450 (E.D.N.Y. 2011) | 5, 7 |
| *HomeTown MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 193 (2d Cir. 2004) | 8 |
| *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21, 29 (2d Cir. 2000) | 9 |
| *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012) | 9 |

## PRELIMINARY STATEMENT

Defendants, aware of the frank legal insufficiency of their legal claims, have submitted a brief by which they ask this Court not to dismiss them based on an entirely new cause of action neither alleged nor otherwise previously known to the law: "Unauthorized lead generation." In fact, this new tort is merely the same old argument about trademarks, copyrights and unfair competition that courts have taken to rejecting routinely: The proposition that posting bona fide content about a person or entity on a website is unlawful if it generates revenue for anyone but the person or entity that "owns" some intellectual property right that coincides with that content.

## STATEMENT OF FACTS

Defendants' brief in opposition to the motion by BSR includes a paragraph on page 3, beginning with the words, "Both Cross-Claimants," that includes, "by way of background," factual assertions regarding "leads" that are not alleged in any of the pleadings, or otherwise part of the record. Nor are they authenticated such that they could properly be considered by the Court if it were to convert this motion to one for summary judgment.

## LEGAL ARGUMENT

### I.   DEFENDANTS HAVE FAILED TO STATE CLAIMS SOUNDING IN TRADEMARK INFRINGEMENT OR UNFAIR COMPETITION.

Defendants make a remarkable statement in their opposition brief: "BSR does not claim that Cross-Claimants failed to allege sufficient facts to support their claims. Rather, BSR claims that its fair use affirmative defenses defeat the counterclaims as a matter of law." This formulation, at the outset, is sophistry: What BSR demonstrated in its motion, in fact, is that the facts alleged in the counterclaims, as a matter of law, **describe lawful activities** – conduct which, even if accepted as true, does not state a claim for relief. The fact that this failure of pleading may also be formulated and asserted as an affirmative defense does not insulate the pleadings from the application of the

1

relevant law to the facts alleged, as required by Fed. R. Civ. P. 12(b)(6).

The chief case relied on by defendants, *Electronic Arts, inc. v. Textron, Inc.,* No. C 12-00118 WHA (N.D. Cal. July 25, 2012), does not say otherwise.  In that opinion, the court did indeed hold that – as will be the case often – consideration of the nominative fair use defense was premature.  But it did not, as defendants suggest, assert that it is always premature.  To the contrary, the Electronic Arts cited this Court's opinion in *Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.,* 11 CIV. 9436 ALC HBP, 2012 WL 2248593, at *8 (S.D.N.Y. Jun. 15, 2012) to the effect that nominative fair use is **not** premature "where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work."  In *Electronic Arts,* as it happens, the court ruled that there were significant fact questions that were obstacles to dismissal on the pleadings.

There are no such questions here, and indeed this case bears far more resemblance to *Louis Vuitton* than to *Electronic Arts,* and indeed to many other cases in which courts in this Circuit have had no hesitation about stopping in their tracks plainly untenable legal claims under the Lanham Act.  As this Court explained in *Yankee Pub. Inc. v. News Am. Pub. Inc.,* 809 F. Supp. 267, 276 (S.D.N.Y. 1992):

> [T]he Second Circuit has construed the Lanham Act narrowly when the unauthorized use of the trademark is for the purpose of a communicative message, rather than identification of product origin. Thus, where the unauthorized use of a trademark is for expressive purposes of comedy, parody, allusion, criticism, news reporting, and commentary, the law requires a balancing of the rights of the trademark owner against the interests of free speech.

In so holding, the Court cited to and relied on *Rogers v. Grimaldi,* 875 F.2d 994, 999 (2d Cir.1989), which, while not using the term "fair use," describes it aptly – "where the unauthorized use of a trademark is for expressive purposes of comedy, parody, allusion, criticism, news reporting, and commentary" – as a doctrinal limitation on the application of trademark law.  That limitation is

readily applicable here based on the facts as pled, for the BSR's website is "for an expressive purpose[] . . ." such as "criticism, news reporting, and commentary."

In light of these considerations, the Court in *Electronic Arts* applied the Rogers criteria to the plaintiff's allegations and, as BSR submits the Court should do here, found them insufficient to support a claim for trademark infringement.  It did so without concern for whether those grounds for dismissal were also couched as affirmative defenses.  The operative passage of the opinion is lengthy, but is so thorough in its analysis and applicable here – even though the Court's focus was on expression in art rather than as criticism, news reporting or commentary – that it is worth reproducing in full:

> The public's interest in avoiding consumer confusion (assuming the Lanham Act covers this type of confusion) is not so great as to overcome the significant threats to free expression from holding Warner Bros. liable for its noncommercial speech in this case. This is especially true since the relevant confusion is caused by a third-party—one with whom Warner Bros. has no relationship whatsoever. Any confusion created by Warner Bros. is at most indirect and thus "too slight to warrant application of the Lanham Act." *See* Syler[ v. Woodruff, 610 F.Supp.2d 256,] 266 [(S.D.N.Y. 2009)] (quoting *Rogers,* 875 F.2d at 1000).
>
>  Louis Vuitton maintains that the Rogers test cannot be assessed on a motion to dismiss. The Court disagrees. Although many courts have considered the Rogers test on a summary judgment motion, not on a motion to dismiss, the circuit has never stated that a court cannot properly apply the Rogers test (or the likelihood of confusion factors) on a motion to dismiss.  In fact, the Second Circuit has suggested that it would be appropriate "where the court is satisfied that the products or marks are so dissimilar that no question of fact is presented." *Pirone* [*v. MacMillian*, 894 F.2d 579,] 584 [(2d Cir.1990)]; cf. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (holding that no discovery or fact-finding is necessary to consider whether works are "substantially similar" under copyright law where all that is required is a visual comparison of the works). In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work (and without relying on the likelihood of confusion factors to do so).  See, e.g., Stewart Surfboards, Inc. v. Disney Book Group, LLC, No. 10–cv–2982, slip. op. (C.D. Cal. May 11, 2011) (no likelihood of confusion that readers would believe that plaintiff surfboard manufacturer endorsed a Hannah Montana book because one of its surfboards appeared on the back cover); *Gottlieb* [*Dev. LLC v. Paramount Pictures Corp.*], 590 F.Supp.2d 625,] 630 [(S.D.N.Y.2008)] (no likelihood of confusion that

3

viewers would believe plaintiff pinball machine owner endorsed the movie "What Women Want" because it appeared in the background of a few scenes); Burnett v. Twentieth Century Fox Film Corp., 491 F.Supp.2d 962, 973 (C.D.Cal. 2007) (no likelihood of confusion that viewers would believe plaintiff Carol Burnett endorsed a Family Guy sketch making fun of her); cf. Wham–O, Inc. v. Paramount Pictures Corp., 286 F.Supp.2d 1254 (N.D. Cal. 2003) (denying preliminary injunction without discovery where no likelihood of confusion that viewers would believe that plaintiff maker of the Slip 'N Slide endorsed the movie "Dickie Roberts: Former Child Star" because the protagonist (mis)used the toy water slide in one scene of the movie). . . .

In a case such as this one, no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression.

*Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't Inc.*, 11 CIV. 9436 ALC HBP, 2012 WL 2248593 (S.D.N.Y. June 15, 2012).

This passage, and the cases cited in it, belie defendants' suggestion that courts will only analyze the possibility of confusion, and rule out implausible confusion claims, with respect to gripe sites, on which basis they seek to distinguish *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) *aff'd*, 355 F. App'x. 508 (2d Cir. 2009) and *Devere Group GmbH v. Opinion Corp.*, __ F.Supp.2d __ , 11-CV-3360 FB LB, 2012 WL 2884986 (E.D.N.Y. July 13, 2012).

Nor is the totem of "lead generation," which is just a new way of describing advertising, relevant to the consumer confusion question. Defendants state that fair use – or, as they insist on repeating, nominative fair use – does not apply here, because the have alleged that BSR "misdirect[s] Internet users from Cross-Claimants' official websites" to obtain revenue.  The "misdirection" fails on several scores.  One of them is that users are "misdirected" away from defendants' own websites, which is simply a conclusory characterization of the fact, clear from the pleadings and exhibits, that users are presented with a choice of clicking defendants' official websites or, instead, what they readily recognize to be an advertisement for a competitor.

This is not "capitalizing on consumer confusion," both because the claim of confusion is implausible and because, by this logic, any use of a trademark in bona fide published content – such as by BSR – would be deemed unlawful "capitalizing" on trademarks any time context-based

advertisements offered Internet users an alternative source for a product or service besides that being mentioned on the page in question. Such a suggestion, which is premised on intial interest confusion, was rejected in *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450 (E.D.N.Y. 2011), which, although a gripe site case, based its analysis primarily on the fact that the plaintiff and the defendant were not in competition:

> In the context of the Internet, the concern is that potential customers of one website will be diverted and distracted to a competing website. The harm is that the potential customer believes that the competing website is associated with the website the customer was originally searching for and will not resume searching for the original website. . . .
>
> Initial interest confusion is unlikely here. As an initial matter, [defendant] cannot divert Internet users away from plaintiffs' sites because [its] site is not in competition with those of plaintiffs. There is no competitive proximity between the parties' goods and services; [plaintiffs] are in completely different fields [from defendant].

*Id.* at 465 (internal quotes and citations omitted). No case is cited by defendants, nor is there one, to support the proposition that the existence of "lead generation" forms on a web page would affect this analysis, premised as it is on the idea that consumers are not idiots and they know the difference between the school being discussed on a website and a request by the website for consumer preference information. Nor does their fantastic assertion that the websites "compete" in an imagined market for "web rankings" have any basis in law – indeed, it is flatly contradicted by *Ascentive* – or common sense. Such an argument, in the Internet era, would make everyone competitors of everyone else, and render the legal criterion of whether businesses are competitors meaningless.

Unable to argue that there is actually any misleading or false information about their school businesses on BSR's site, defendants seek to turn necessity into a virtue for their case, making the novel suggestion that because BSR allegedly copied a description of their business from defendants' own website, this is in and of itself constitutes a source of consumer confusion. This proposition implicitly takes as a given an incredible proposition, or at least one that is incredible for defendants

to be making:  That consumers are aware of what the text found on defendants' own sites says, and would take such copying as an indication that BSR's content is "sourced from" (which would not be a trademark infringement issue anyway) – or  "sponsored by and/or endorsed by the Cross-Claimants."

The reason this suggestion is a strange one for defendants to proffer is not only that it has no basis in law, but that it attempts to turn an allegation of copyright infringement into trademark infringement.   The argument fails, and undermines defendants' own opposition, because it constitutes a hopeless contradiction to defendants' "diversion" claim.  For if, as defendants urge, consumers know that the same text can be found on defendants' own websites, that means they are not diverted at all but are, defendants admit, able to find those websites.  Moreover, if, as defendants claim, consumers recognize the text as that also used on the official sites, they are obviously **not confused in the least**.

If defendants' attempt to evade the implausibility of their consumer-confusion claim has resulted in their own confusion, this is not chargeable to BSR.   Defendants have handily demonstrated that their trademark and unfair competition claims should be dismissed as a matter of law.

## II.    DEFENDANTS SEEK RELIEF FOR, BUT HAVE FAILED TO PLEAD, A CLAIM FOR SECONDARY TRADEMARK LIABILITY.

Defendants do not respond, in their brief, to BSR's argument that they have failed to allege facts necessary to state a claim such that liability should attach to BSR for the acts of third persons, arguing merely that they "do not need to state a claim for secondary liability."  Their problem, however, is that at least part of their claim, as they have pled it, is one for secondary liability – i.e., liability for the acts of third parties.  It does not matter that, seeking to avoid this problem, defendants characterize their allegations as direct infringement – the claims are, in fact, almost

entirely premised on allegations about third parties' infringing behavior.  An exemplary allegation, repeated several times, states as follows:

> 48.    Upon information and belief, BSR obtains fees from schools that are in direct competition with MILLER-MOTTE® branded schools and/or other Delta Schools for redirecting consumers looking for MILLER-MOTTE® branded services, and/or the services of other Delta Schools, to the websites of schools that are in direct competition with MILLER-MOTTE® branded schools and/or other Delta Schools.

Despite having made such allegations, they ignore the quotation from the Court in *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450 (E.D.N.Y. 2011) cited in BSR's moving brief which explains that such claims do, in fact, sound in secondary liability:

> Plaintiffs' complaints contain allegations regarding third-party advertisements on PissedConsumer's website. . . .  But the complaints contain no allegations, as they must, that pertain to "the extent of control exercised by [PissedConsumer] over the third party's means of infringement' or that PissedConsumer was aware of 'specific instances of actual infringement" and continued to supply its service after it knew or should have known that it was being used [by others] to infringe plaintiffs' marks.

842 F. Supp. 2d at 470-71 (citations and footnotes omitted).  To the extent any aspect of defendants' counterclaims are premised on something happening on a website – e.g., a website to which consumers are "redirected" – that is not BSR's website, that is a claim for secondary trademark liability, whether they recognize it as such or not.  Defendants have failed to allege any of the necessary elements to state a claim under such a theory of recovery.

## III.   DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.

Defendants' brief offers no response to the outcome-determinative argument in BSR's moving brief that their copyright claims are barred by 17 U.S.C. § 412, and defendants must therefore be deemed to have conceded the issue.   Despite this devastating concession, defendants nonetheless raise arguments which might be of some interest if their copyrights had been timely registered. They are, however, meritless.

"There is no dispute," defendants assert, "that the works in issue are entitled to copyright protection or that BSR copied the works in their entirety."  In fact, the issue of whether the works are indeed entitled to copyright protection was not raised in BSR's moving brief, but no concession is intended on that point.   In reality, copyrightability is a serious question as to many of the so-called "works."  An excellent example is at the top of page 10 of defendants' own brief – a passage listing the locations of certain of Heritage's school businesses, and the subjects offered there.  This is hardly "creative writing," and there is some modicum of creativity that must be present to afford copyright protection to a work.  See, *HomeTown MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 193 (2d Cir. 2004) ("idea of using a manufacturer's factual identification of a grocery product is not a sufficient exercise of creativity and that the facts in a description of a product's brand, manufacturer, or name are not copyrightable").  It is hard to see how this passage passes the test.

Regarding defendants' claim that there is no dispute that "BSR copied the works in their entirety," defendants do not demonstrate by citation to the allegations of the counterclaim what they mean.  Not only is this assertion disputed, it is completely baseless, except perhaps with respect to the embedded videos, discussed below.

Defendants also include, at the top of page 16 of their brief, a discourse about the effect of "duplicate content" on Google searches.  However, defendants' attempt to use Google ranking as a proxy for competition in the same market is, as mentioned above, unsupported by any precedent; nor do defendants cite cases which suggest that, by analogy, the law might be extended in such a direction.

There is none.  Defendants' claim, not found in the pleadings, that both BSR and their websites "compete in the same market" is an example of what has been recognized as the "danger lurking in copyright protection [where] the tail threatens to wag the dog—proprietors at times seize on copyright protection for [a] label in order to leverage their thin copyright protection over the text

8

... on the label into a monopoly on the typically uncopyrightable product to which it is attached." *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21, 29 (2d Cir. 2000). There is no "market" and hence no "competition" for defendants' "labels," i.e., their online advertisements. Defendants are not in the website business, which is why they do not charge users to read their online advertisements. This "dog" does not hunt.

In a related vein is the matter of the embedded videos. Regarding whether the Court should consider the YouTube terms of service, it is hard to understand how defendants can stand on such a principle when they themselves, in their brief, cite (a) Google's support page on the subject of "duplicate content," (b) an entire paragraph asserting facts absent from the pleadings about so-called lead generation sites, and (c) Google's terms of service (i.e., in the footnote on page 18, which – read in its entirety – stands for the exact opposite of what defendants claim it says). In any case, defendants' argument that, by including defendants' own YouTube embedding code on its website, BSR committed copyright infringement, holds no water either way. The Seventh Circuit explained in *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012), pasting an video embed code into one's website is not even copying, much less copyright infringement:

> [An] embed code contains the video's web address plus instructions for how to display the video. Armed with that code, [defendant] myVidster creates a web page that makes the video appear to be on myVidster's site. When you visit the site, that video and other videos appear, each in the form of a "thumbnail," a miniature picture of a video's opening screen shot. A click on a thumbnail activates computer code that connects the visitor's computer to the server; the connection made, the visitor is now watching the video. He's watching it through a frame that myVidster has put around it, containing ads (it's by selling ads for display on its website that myVidster finances its operation). He may think, therefore, that he's seeing the video on myVidster's website. But actually the video is being transmitted directly from the server on which the video is stored to the viewer's computer.

That is exactly what is alleged here. And absent an allegation – which does not exist – that BSR ever actually copied defendants' videos, their claim that BSR infringed their copyright by allowing consumers ready access to their own promotional videos does not state a claim for copyright

9

infringement.

## CONCLUSION

For the foregoing reasons, plaintiff / counterclaim defendant Boarding School Review, LLC

respectfully requests that this Court dismiss the counterclaims with prejudice pursuant to Fed. R.

Civ. P. 12(b)(6).

GOETZ FITZPATRICK LLP

By:  ___/s/_____RDC_____
        RONALD D. COLEMAN (RC 3875)

Marcus A. Nussbaum (MN 9581)
One Penn Plaza—Suite 4401
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
mnussbaum@goetzfitz.com
*Attorneys for Plaintiff*
*Boarding School Review, LLC*

Dated: September 7, 2012