UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BOARDING SCHOOL REVIEW, LLC,**<br><br>*Defendants,*<br>- *vs.* -<br><br>**DELTA CAREER EDUCATION CORPORATION,** *et al.***,**<br><br>*Defendants.*<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - -<br><br>**DELTA CAREER EDUCATION CORPORATION,** *et al.*<br><br>*Counterclaim Plaintiffs*,<br><br>- *vs.* -<br><br>**BOARDING SCHOOL REVIEW, LLC**<br><br>*Counterclaim Defendant.* | CIVIL ACTION NO.<br><br>1:11-cv-08921-DAB |

MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR RECONSIDERATION

Ronald D. Coleman (RC 3875)
**GOETZ FITZPATRICK LLP**
One Penn Plaza—Suite 4401
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
*Attorneys for Plaintiff / Counterclaim Defendant
Boarding School Review, LLC*

## TABLE OF CONTENTS

| | | |
|---|---|---|
| TABLE OF AUTHORITIES | …………………………………………… | ii |
| PRELIMINARY STATEMENT | …………………………………………… | 1 |
| LEGAL ARGUMENT | …………………………………………… | 2 |
| I.  DEFENDANTS HAVE NOT SET FORTH VALID GROUNDS TO JUSTIFY RECONSIDERATION BASED ON NEW EVIDENCE AND A NEW LEGAL THEORY. | …………………………………………… | 2 |
| a.  Defendants improperly seek to place new evidence before the court on a motion for reconsideration. | …………………………………………… | 3 |
| b.  Defendants improperly seek to make a new legal argument on a motion for reconsideration. | …………………………………………… | 6 |
| II.  THE DOCUMENTS ON WHICH DEFENDANTS RELY ARE NOT APPROPRIATE SUBJECTS OF CONSIDERATION BY WAY OF JUDICIAL NOTICE. | …………………………………………… | 8 |
| III.  DEFENDANTS' NEW LEGAL ARGUMENT FOR SUSTAINING THEIR § 349 CLAIM IS MERITLESS. | …………………………………………… | 12 |
| CONCLUSION | …………………………………………… | 14 |

## TABLE OF AUTHORITIES

### CASES

| | |
|---|---|
| *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc*., 888 F. Supp. 2d 478 (S.D.N.Y. 2012) | 7, 8 |
| *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) | 7 |
| *Anwar v. Fairfield Greenwich Ltd*. 2013 WL 1480063 (S.D.N.Y., Apr. 4, 2013, 09 CIV. 0118 VM) | 2 |
| *Avon Products, Inc. v. S.C. Johnson & Son, Inc*., 984 F. Supp. 768 (S.D.N.Y. 1997) | 13 |
| *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488 (S.D.N.Y. 2003) | 10 |
| *Carolco Pictures Inc. v. Sirota*, 700 F.Supp. 169 (S.D.N.Y. 1988) | 6, 7 |
| *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206 (2d Cir. 2012) | 11 |
| *Dallas v. Goldberg*, 95 CIV. 9076 LTS RLE, 2001 WL 477170 (S.D.N.Y. May 7, 2001) | 8 |
| *Davidson v. Scully*, 172 F.Supp.2d 458 (S.D.N.Y. 2001) | 2 |
| *E.E.O.C. v. Local 638 ... Local 28 of the Sheet Metal Workers' Intern. Ass'n* 2001 WL 12007 (S.D.N.Y., Jan. 2, 2001, 71 CIV. 2877 (RLC)) | 3 |
| *Ferrand v Credit Lyonnais*, 292 F Supp 2d 518 (S.D.N.Y. 2003) | 6 |

*First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 96 Cv. 8243(RLC), 1998 WL 567900 (S.D.N.Y. Sept. 3, 1998) ... 4, 5

*Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124 (S.D.N.Y. 1996) ... 4

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) ... 9, 10

*Goldstein v. Pataki*, 516 F.3d 50 (2d Cir. 2008) ... 11

*In re CRM Holdings, Ltd. Securities Litigation* 2013 WL 787970 (S.D.N.Y., Mar. 4, 2013, 10 CIV 00975 RPP) ... 3, 4

*In re DDAVP Indirect Purchaser Antitrust Litig.*, 05-CV-2237 CS, 2012 WL 4932158 (S.D.N.Y. Oct. 17, 2012) ... 9

*In re Rezulin Products Liab. Litig.*, 224 F.R.D. 346 (S.D.N.Y. 2004) ... 5, 7

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ... 11

*Mannion v. Coors Brewing Co.*, 04 CIV. 1187 (LAK), 2007 WL 3340925 (S.D.N.Y. Nov. 7, 2007) ... 3, 4

*Matter of Yagman,* 796 F.2d 1165 (9th Cir.1986) ... 7

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402 (S.D.N.Y. 2006) ... 13

*Peoples v. Fischer*, 2012 WL 2402593 (S.D.N.Y., June 26, 2012, 11 CIV. 2694 SAS) ... 6

| | |
|---|---|
| *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690, 2000 WL 98057 (S.D.N.Y. Jan 18, 2000) | 2 |
| *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012) | 7 |
| *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280 (S.D.N.Y. 2011) | 11 |
| *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55 (S.D.N.Y. 2007) | 4 |
| *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55 (S.D.N.Y. 2007) | 6 |
| *Sys. Mgmt. Arts Inc. v. Avesta Technologies, Inc.*, 106 F. Supp. 2d 519 (S.D.N.Y. 2000) | 5 |
| *United States v. Knauer*, 707 F. Supp. 2d 379 (E.D.N.Y. 2010) | 10 |
| *Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242 (S.D.N.Y. 2009) | 3 |

**STATUTES AND RULES**

| | |
|---|---|
| Fed. R. Civ. P. 12(b)(6) | 11 |
| New York General Business Law § 349 | 1, 5, 8, 12, 13, 14 |
| Local Rule 6.3 | 1, 2, 3, 4, 5, 6, 7, 14 |
| Fed. R. Evid. 901 | 5 |

Fed. R. Evid. 201     9

15 USC § 1125(a)     13

**PRELIMINARY STATEMENT**

Defendants / Counterclaimants have moved the Court to reconsider its March 29, 2013 order dismissing with prejudice their deceptive trade practices claim under New York General Business Law § 349 against Plaintiff Boarding School Review, LLC ("BSR").  They argue that the Court erred in its concluding that that BSR's republication of publicly-available information about community colleges does not constitute "deceptive marketing practices" that would cause the type of harm likely to trigger intervention by the Federal Trade Commission ("FTC") because there are "there are factual matters that were not before the Court, which would have altered the conclusion reached by the Court."

Defendants' problem is that, as the Court readily determined, defendants' actual pleadings failed to allege facts that could possibly amount to a violation of § 349.  No "new facts" can change this.  Nor does Local Rule 6.3, which governs motions for reconsideration, permit reconsideration based on entirely new legal arguments – and defendants admit that they never made the argument they now claim the Court erroneously "overlooked," along with the "new information" they never bothered to place before the Court on the motion.

And what is this "new information"?  It is, it is respectfully submitted, an irrelevant joke:  Consent orders involving a different company, in a different place, involved in different conduct – and a letter signed by four U.S. Senators urging the Federal Trade Commission to investigate the matter as well.  These, defendants urge, are entitled to judicial notice on the ground that they are official records.  Never mind that they have nothing whatsoever to do with this case; that they are official records of no official determination of anything; and that defendants obviously intend that the Court not merely acknowledge the existence of these documents, but infer from them something about the allegations of their § 349 counterclaims… allegations that the counterclaims do not make.  Never mind, say defendants, that they seek judicial notice of these irrelevancies as a basis

1

for retroactive amendments of its pleadings and in support of a legal argument they did not make on the motion they ask the Court to reconsider.

The law in this Circuit is crystal clear that these are not grounds for reconsideration, and defendants' motion should be denied.

## LEGAL ARGUMENT

**I.    DEFENDANTS HAVE NOT SET FORTH VALID GROUNDS TO JUSTIFY RECONSIDERATION BASED ON NEW EVIDENCE AND A NEW LEGAL THEORY.**

"A party seeking reconsideration 'is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." *Davidson v. Scully*, 172 F.Supp.2d 458, 461-62 (S.D.N.Y. 2001), *quoting Polsby v. St. Martin's Press, Inc.,* No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan 18, 2000) (Mukasey, J.).  Thus "a request for reconsideration under Rule 6.3 of this Court's Local Civil Rules, which governs motions for reconsideration, must demonstrate controlling law or factual matters **put before the court in its decision on the underlying matter** that the movant believes the court overlooked and that might reasonably be expected to alter the conclusion reached by the court." *Anwar v. Fairfield Greenwich Ltd.* 2013 WL 1480063 (S.D.N.Y., Apr. 4, 2013, 09 CIV. 0118 VM) (emphasis added).  Here the materials, and the arguments, advanced by defendants here were not admittedly "put before the Court" previously.  This is despite the fact that they could have been submitted, or at least leave sought for their submission after the motion was fully submitted, months before the Court ruled.  Defendants are asking this Court for relief that is simply not authorized by Local Rule 6.3.

      a.   **Defendants improperly seek to place new evidence before the court on a motion for reconsideration.**

Defendants' motion is premised on "new materials" which they claim the Court "overlooked," but which they acknowledge the Court could not have looked at prior to this reconsideration motion because they did not submit it. But it is black-letter law that "Local Rule 6.3 done not afford a losing party the right to submit any affidavits or new evidence." *In re CRM Holdings, Ltd. Securities Litigation* 2013 WL 787970 at *9 (S.D.N.Y., Mar. 4, 2013, 10 CIV 00975 RPP). *See also*, *Mannion v. Coors Brewing Co.*, 04 CIV. 1187 (LAK), 2007 WL 3340925 (S.D.N.Y. Nov. 7, 2007) at *1 ("A motion for reconsideration is designed to bring to the Court's attention evidence and authorities that were before the Court on the original motion"). This ground alone is a sufficient basis to deny defendants' motion.

Defendants cite, as authority for the rule that courts in this district "have the broad discretion to reevaluate earlier rulings depending upon 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," a single unreported case, *E.E.O.C. v. Local 638 ... Local 28 of the Sheet Metal Workers' Intern. Ass'n* 2001 WL 12007 (S.D.N.Y., Jan. 2, 2001, 71 CIV. 2877 (RLC)). In *Local 638*, however, this Court **rejected** a proffer of new materials on a motion for reconsideration, explaining that they "are novel. They were not merely 'overlooked' by the court and are therefore inappropriate for a Local Rule 6.3 motion." *Id.* at *1. In fact, the language from *Local 638* quoted by defendants refers to "the **availability** of new evidence" (emphasis added). This does not mean a conclusion by the movant, after a court has ruled, that it ought to consider "Plan B." "Although newly discovered evidence can form the basis of a motion for reconsideration, the moving party must demonstrate that it was excusably ignorant of the facts despite using due diligence to learn about them." *Wells Fargo Bank, N.A. v. Sharma*, 642 F. Supp. 2d 242, 249 (S.D.N.Y. 2009) (citations and quotations omitted). As this Court explained in *CRM Holdings*:

> [T]he decisions and complaints to which Plaintiffs refer were all filed—and publicly available—prior to the publication of this Court's Opinion on May 10, 2012. These actions therefore cannot readably be construed as "new." Moreover, these actions are, at best, distantly related to the action here because they involve other defendants, other trusts, and, in some cases, other cities.

*Id.* The same applies here, both in terms of the lack of novelty of the material submitted by defendants with respect to availability, and the attenuated relation of those materials to the facts of this case, as discussed further below.

Indeed, because Rule 6.3 explicitly prohibits reconsideration based on new evidence, it explicitly provides, "No affidavits shall be filed by any party unless directed by the Court." As the Court has explained, "[Local] Civ. R. 6.3 precludes the submission, absent leave of court, of affidavits in support of motions for reconsideration. It does so for a perfectly sensible reason. A motion for reconsideration is designed to bring to the Court's attention evidence and authorities that were before the Court on the original motion but overlooked by it." *Mannion*, *supra*. Thus "[n]o affidavits **or new material** may be submitted" on a motion for reconsideration under this District's Rules; "such a motion is limited to the record that was before the Court on the original motion." *Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1126 (S.D.N.Y. 1996).

Defendants have sought to circumvent this prohibition by seeking judicial notice of a raft of new materials – a gambit this Court should reject, as it did in *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55 (S.D.N.Y. 2007), where the new evidence sought to be introduced was simply filed without any authentication. The Court explained as follows:

> Standard and NASD dispute Local Rule 6.3's exact meaning. Standard argues that, because the Rule's text bars only the submission of affidavits without court permission and is silent with regard to actual documentary evidence, submission of such evidence is permissible if it is not accompanied by an affidavit. (See Standard's Opp'n 3 n. 2.) The case law interpreting Local Rule 6.3, however, indicates that the regulation of affidavits stems from the prohibition on the submission of new evidence. *See, e.g., First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 96 Cv. 8243(RLC), 1998 WL 567900, at *3 (S.D.N.Y. Sept. 3, 1998) ("**Because the motion does not afford the losing party the right to submit new evidence to bolster relief**, parties are not to submit affidavits in support of a Rule 6.3 motion for

4

> reconsideration unless directed by the court.") (internal quotation marks and citation omitted) (emphasis added). Additionally, allowing a party to submit documentary evidence without an accompanying affidavit would allow circumvention of Federal Rule of Evidence 901's authentication requirement. See Fed. R. Evid. 901(a). Therefore the Court concludes that a party cannot evade Local Rule 6.3's strictures simply by submitting evidence without an accompanying, authenticating affidavit.

*Id.* at 68, n. 10. Here, defendants will argue, authentication is not necessary, because the documents they seek to place before the Court are public records. But because, as demonstrated below, the materials defendants seek to introduce are not at all proper subjects for judicial notice, the Court should not weigh them in connection with the present motion and, indeed, should strike them from the record. *See, Sys. Mgmt. Arts Inc. v. Avesta Technologies, Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000) (motion for reconsideration "is not the proper avenue for the submission of new material"; striking declarations).

Inevitably defendants will, in response to this point, urge nonetheless that the interests of justice counsel the Court's consideration of these new materials, and that BSR is involved in a hypertechnical game of "gotcha." In fact, however, the equities run entirely in the other direction, as this Court explained in *In re Rezulin Products Liab. Litig.*, 224 F.R.D. 346, 352 (S.D.N.Y. 2004). Denying relief under Rule 6.3 based on new legal materials the reconsideration movant declined to make on the underlying motion, the Court wrote, "Having lost that gamble, they now seek reconsideration, principally on the basis of [an] affidavit which was not before the Court previously and which, therefore, could not possibly have been overlooked. This is not a basis for a motion for reconsideration under Local Civil Rule 6.3."

Defendants here too, represented by highly able counsel, took just such a gamble themselves, and lost. Now they wish to roll the dice again, but this time with house money – springing new materials and new theories of liability on BSR, and doing so in the position of a movant (thus entitled to a reply brief and a last word on the merits of a motion made by their adversary). Defendants' insistence that their request for a second chance to make what they purport

5

to be the "right argument" regarding their § 349 claim is mandated "interest of justice" rings hollow, however, and not merely because the "interest of justice" is a criterion that every party seeking reconsideration claims to have met. It is a specious argument because Local Rule 6.3 was drafted to prevent just such a litigation free-for-all. Defendants provide no basis whatsoever for this Court to apply its Local Rule any other way on these facts.

  b. **Defendants improperly seek to make a new legal argument on a motion for reconsideration.**

Not only are new factual allegations or submissions not an appropriate ground for reconsideration; so are new legal theories, such as those defendants seek to argue, barred as grounds for relief under Rule 6.3. "A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal." *Peoples v. Fischer*, 2012 WL 2402593 (S.D.N.Y., June 26, 2012, 11 CIV. 2694 SAS); *see also*, *Ferrand v Credit Lyonnais*, 292 F Supp 2d 518, 520 (S.D.N.Y. 2003)("A Local Rule 6.3 motion is not intended as a vehicle for a party dissatisfied with the court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion"). Nor can a party attempt, as defendants manifestly attempt to do here, to shoehorn "new evidence" into a rationale for advancing a new theory. "[T]he discovery of new evidence does not permit a party to advance a claim in its motion for reconsideration that was not before the court originally." *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 621 F. Supp. 2d 55, 70 (S.D.N.Y. 2007).

As this Court explained in *Carolco Pictures Inc. v. Sirota*, 700 F.Supp. 169, 170 (S.D.N.Y. 1988), considering a motion made under Local Rule 6.3's predecessor, Local Rule 3(j):

> Local Rule 3(j) requires a party to set forth concisely the matters or controlling decisions which counsel believes the Court has overlooked. Motions for reargument are granted when new facts come to light or when it appears that controlling precedents were overlooked. The purpose of the rule is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.

6

> In support of their motion for reargument, Sirota and Block contend that the court failed to consider the clear and convincing standard of proof required by *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) in ruling on their summary judgment motion, and that *Matter of Yagman,* 796 F.2d 1165 (9th Cir.1986) requires that California law be applied to the privilege issue. . .
>
> Defendants did not, however, cite *Matter of Yagman* in their prior memoranda, and although defendants cited *Anderson v. Liberty Lobby* for general principles of summary judgment, they did not contend that *Anderson* required application of the clear and convincing standard of proof on Carolco's libel claim.

*Id.* at 170 (citations and quotations omitted).

Defendants nonetheless claim that they were unfairly "surprised" by the Court's grounds for dismissing its claims under § 349 because BSR had not made the legal argument on which the Court based its decision in its moving papers. Their reasoning seems to be that if BSR did not raise the "right" basis for establishing the legal viability of defendants' claims, why should defendants? This Court has readily disposed of similar irrational rationalizations before, however, such as in *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012). In that case, the Court rejected an attempt to place new legal theories before the Court to resurrect a claim on which it had not prevailed on a motion by providing new legal arguments for an old motion:

> AASP cannot now seek to re-litigate the same issue based on arguments it previously could have, but elected not to make. See *In re Rezulin*, 224 F.R.D. at 352 (explaining that a litigant cannot decline to address an issue, either through inadvertence or as a strategic maneuver, and then expect the court to grant reconsideration to advance arguments that it previously could and should have made) . . . Therefore, AASP's motion for reconsideration on this ground is denied.

*Id.* at 344. Similarly, in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 478 (S.D.N.Y. 2012), the Court gave short shrift to the reconsideration movant's complaint that it was prevented from pursuing what, in retrospect, it deemed the "right" legal argument due to page limitations on briefs of the underlying motion:

> Plaintiffs faced a series of tactical decisions—as many parties in complex litigations do—and had to make difficult decisions as to which declarations, arguments, and

7

> evidence were most essential to their opposition to defendants' motion. Were page limitations—and a court's refusal to bend those limitations—grounds to allow parties to submit additional materials on their motions for reconsideration, then the limited nature of reconsideration would be eviscerated (as would page limits for that matter).

*Id.* at 487. As the Court said in *Dallas v. Goldberg*, 95 CIV. 9076 LTS RLE, 2001 WL 477170 (S.D.N.Y. May 7, 2001) at *1, "It is, simply, clear that the Office of the Attorney General recognizes that it did not argue persuasively its position in the initial round of papers and, upon reflection, wishes to start over. Such practice is inconsistent with the interests of judicial economy and fairness, as well as with the governing procedural rules." It would be similar unjust and irregular to permit such a practice, as defendants seek, here.

## II. THE DOCUMENTS ON WHICH DEFENDANTS RELY ARE NOT APPROPRIATE SUBJECTS OF CONSIDERATION BY WAY OF JUDICIAL NOTICE.

Besides seeking to re-litigate their pending motion by submitting materials long available to them as grounds to argue a legal point they neglected to address, those materials themselves are not entitled to judicial notice here because they are not adjudicative facts. What these documents show is that twenty State Attorneys General settled an investigation into alleged lead generation practices focusing on misleading veterans by QuinnStreet, a company utterly unrelated to this litigation. Defendants, seizing on the words "lead generation" found in their pleadings and the fact that, like the company in the documents, BSR has a website related to colleges, ask the Court to leap to the conclusion that "Thus, there is no question that the deceptive lead generation practices cause harm to the general public sufficient to support a claim under § 349."

That is not an argument, it is a classic non-sequitur, as well a considerable obfuscation of meaning. In defendants' formulation, a set of specific alleged – alleged – practices that are the subject of the consent agreements between regulators and some other company are metamorphosed

8

into "the deceptive lead generation practices" alleged against BSR in the counterclaims in this case – which, as demonstrated in more detail below, they are not.

Courts routinely reject such sophistry, as this Court did in *In re DDAVP Indirect Purchaser Antitrust Litig.*, 05-CV-2237 CS, 2012 WL 4932158 (S.D.N.Y. Oct. 17, 2012). In that case a party requested judicial notice of a number of similar cases involving the same defendant – unlike here, where the allegations involve another company – and argued that the Court "simply take judicial notice that such allegations **exist** and that Plaintiffs intend to prove these allegations **in this case**," *id.* at *7 (emphasis in original), as grounds to permit them to pursue injunctive relief. The Court declined the invitation, writing as follows:

> It appears that Plaintiffs are asking this Court to look to facts alleged within documents filed in other court cases not to establish their existence, but rather to provide the reasoned basis for the court's conclusion; that is, Plaintiffs want the Court to consider not just that Defendants have been accused, but that Defendants in fact have an alleged proclivity for engaging in inequitable conduct before the PTO. Judicial notice of these facts is not permitted under Federal Rule of Evidence 201. Even if this Court were to take judicial notice of these filings, that Defendants may have been charged with engaging, or may have engaged, in inequitable conduct in other cases is no basis for letting Plaintiffs pursue their claim for an injunction in this case for the reasons already stated.

*Id.*

Moreover, judicial notice of other proceedings is only appropriate with respect to the question of whether the materials sought to be noticed were integral to the pleadings that are the subject of the motion. As the Second Circuit explained in *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006):

> First, a necessary prerequisite for that exception is that the plaintiff rel[ied] on the terms and effect of [the] document in drafting the complaint; mere notice or possession is not enough. Here, [Massie's] testimony as a government witness in an unrelated criminal proceeding was neither mentioned nor relied upon by appellant in drafting its complaint. . . .
>
> Second, defendants do not seriously argue that the final determination of March 2005 was integral to the complaint, as it was issued after this action was initiated and logically could not have been contemplated by, much less integral to, the complaint.

9

> Instead defendants point out that the document, along with Massie's testimony, is a public record susceptible to judicial notice and therefore excepted from the conversion requirement. We cannot agree. A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.

*Id.* at 156. Similarly, in *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488 (S.D.N.Y. 2003), the Court rejected a judicial notice application concerning a General Release involving one of the parties because it was "neither mentioned in, attached to, nor incorporated by reference in the Third–Party Complaint. Nor is the General Release integral to the Third–Party Complaint; in fact, there is no indication that Monaco was aware of, let alone relied upon, the General Release when he drafted the Third–Party Complaint." *Id.* at 498. The integration required by the cases is obviously impossible where, as here, the documents were generated in mid-2012, well after the counterclaim that defendants seek to have resurrected were filed and it is obvious that there is no reference at all to the new materials in those counterclaims. These facts are fatal to defendants' request.

Indeed, even if these criteria were met, which they manifestly are not here, the suggestion that a letter by four members of the Senate and two consent decrees involving an unrelated company – which explicitly state that the allegations against QuinnStreet are denied (Doc. #25 at 9, 41) – hardly qualifies as an "adjudicative fact" applicable to the case at bar which. Indeed, if anything, these materials concerning investigations by regulators are closer to being "legislative facts" than adjudicatory facts; *see*, *United States v. Knauer*, 707 F. Supp. 2d 379, 397 (E.D.N.Y. 2010) – but they are not even that. They are merely two consent decrees explicity disclaiming wrongdoing by an unrelated party, along with a letter from four legislators expressing their opinion about protecting consumers.

The cases cited by defendants in their Request for Judicial Notice do not support their position. Not a single one of them supports the novel suggestion that a court may take judicial notice of allegations made, much less not adjudicated, concerning a party unrelated to the litigation

10

for purposes of establishing the legal basis for sustaining a legal claim against dismissal under Fed. R. Civ. P. 12(b)(6) – or anything even similar. To the contrary, each case cited by defendants involved judicial notice of facts, unlike the ones discussed in their "new information," concerning parties to the litigation in which notice was sought.[1] Thus in *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 227 (2d Cir. 2012), the Court took judicial notice of an entirely subsidiary matter – the seizure of counterfeit Louboutin shoes illegally shipped to the United States – that involved **the very shoes** whose trademark status was in dispute in the litigation. In *Goldstein v. Pataki*, 516 F.3d 50, 60 (2d Cir. 2008), the Court took judicial notice of the fact that the New York State Public Authorities Control Board issued a resolution approving of the Atlantic Yards Project – in a case concerning whether the taking of property related to **that project** was an impermissible taking. And in *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991), the publicly filed documents that the Court found appropriate for judicial notice involved documents containing the **very disclosures** that were claimed to be insufficient under the securities laws made by the **same parties** who were defending against those claims.

Indeed, if anything is compelling about defendants' submission it is the paltry quality of the "new evidence" it seeks to have the Court consider to justify its completely new legal argument. For that matter, the practices involving QuinnStreet referred to in these documents all have, as a dominant element, a compelling element completely absent from any allegation concerning BSR: A focus on alleged deception by QuinnStreet of Armed Forces veterans. These are at the heart of first four of the seven allegations laid out against QuinnStreet in both the Assurance of Voluntary Compliance (Doc. # 25 at 9) and in the Petition filed by the State of Tennessee (Doc. #25 at 40).

---

[1] The exception is *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 300 (S.D.N.Y. 2011), in which the Court took judicial notice of the date that a certain case was argued before the New York Court of Appeals for purposes of establishing that the eventual decision of the Court of Appeals would constitute binding authority regarding that issue.

Furthermore, the letter from the four senators describes the activities of QuinnStreet as follows: "QuinnStreet operated sites that recruited veterans and other students on behalf of for-profit colleges and the states alleged that it had violated consumer-protection laws by running 'false, misleading and deceptive' sites, like GIBill.com, which falsely implied that they were operated or approved by the federal government."  (Doc. #25 at 6.)

In contrast, here there is not a single allegation, nor even any "new information," that connects – plausibly or otherwise – BSR with such practices.  Additionally, the letter states that lead generators utilize Internet users' searches to "promise prospective students connections to admission offices of selective and well-known public and non-profit colleges."  There is nothing in the counterclaims, nor any "new information" freshly claimed to be obtained by defendants, accusing BSR of anything like that either.

In short, the documents on which defendants' motion relies, and which they claim are entitled to judicial notices, are not adjudicative facts, not legislative facts, not relevant facts and certainly not admissible facts.  For these reasons the Court should deny the request for judicial notice of them in all respects and deny the motion for reconsideration as well.

### III.    DEFENDANTS' NEW LEGAL ARGUMENT FOR SUSTAINING THEIR § 349 CLAIM IS MERITLESS.

As set forth above, the entire premise and procedure of defendants' motion for reconsideration renders it meritless.  So does its substance – its claim that defendants' § 349 counterclaim should not be dismissed because of the "public interest" supposedly discernible in their counterclaims by virtue of the light shed by their "new information."  Defendants lament that "Because this issue was not raised in BSR's motion but instead was articulated for the first time in the Court's Memorandum and Order, [they] did not previously have an opportunity to present this information to the Court. Had the Court had all of the pertinent information, it likely would not have dismissed the deceptive trade practices claim."  (Doc. #24 at 4.)

Defendants take great liberties here with what the Court would "likely" have done, considering, as set forth above, how insignificant and irrelevant defendants' "pertinent information" actually is. While the Court referred to "a plausible allegation of the type of direct and broad harm to consumers or the general public that would trigger Federal Trade Commission intervention," they offer up a letter from some Senators – obviously not acted upon – requesting something less than FTC intervention in connection with different conduct by different people. Furthermore, as also established above, the law is clear that choosing to make Argument A instead of Argument B does not constitute deprivation of "an opportunity to present" Argument B. But in any event, the argument that actually was briefed by the parties on the motion is entirely outcome-determinative here. Had the Court chosen to rely on it alone, the result would be the same.

In its moving brief, BSR wrote as follows: "[D]efendants have also made a counterclaim under N.Y. Gen. Bus. Law §349, which prohibits 'Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.' It is well established that such state-law versions of the Lanham Act rise and fall based on the same standards, and this counterclaim should be dismissed for the reasons set forth in Section I. *See, Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006)." (Doc. # 18 at 18-19). *See also*, *Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997)("the standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under the New York common law for unfair competition and §§ 349 and 350 of the New York General Business Law") – claims which the Court dismissed, albeit with leave to replead.

Defendants' motion fails to address this point, which provides more than adequate grounds for dismissal of their § 349 claim. At the end of the day the Court was entirely accurate in its holding that "Nothing in Defendants' Counterclaims approaches a plausible allegation of the type of

13

direct and broad harm to consumers or the general public that would trigger Federal Trade Commission intervention. Instead, the Counterclaims essentially allege harm to Defendants rather than the public at large." (Doc. # 22 at 16-17.)  Nothing in the present submission changes that.

## CONCLUSION

By all indications, defendants' "real" goal here is to earn a "promotion" of the with-prejudice dismissal of their specious § 349 claim to dismissal with prejudice, so that they may then formulaically plead the "magic words" of alleging harm to the public at large and expand the scope of a litigation initiated by their threats and whose sole purpose is to intimidate and wear down an adversary with fewer resources.  Their motion, however, provides not the slightest legal or factual ground, much less any that meet the appropriately demanding requirements of Local Rule 6.3, to permit what would amount to an unjust *nunc pro tunc* amendment of their counterclaims.

For the foregoing reasons, plaintiff / counterclaim defendant Boarding School Review, LLC respectfully requests that this Court deny defendants' motion to reconsider its dismissal with prejudice of their claim under New York General Business Law § 349.

**GOETZ FITZPATRICK LLP**

By: _____
RONALD D. COLEMAN (RC 3875)

One Penn Plaza—Suite 4401
New York, New York 10119
(212) 695-8100
rcoleman@goetzfitz.com
*Attorneys for Plaintiff*
*Boarding School Review, LLC*

Dated:  April 22, 2013

14