DUANE MORRIS LLP
R. Terry Parker
1540 Broadway
New York, NY 10036-4086
Telephone: 212.692.1000

and

Keith Zakarin (admitted *pro hac vice*)
Michelle Hon Donovan (admitted *pro hac vice*)
Heather U. Guerena (admitted *pro hac vice*)
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: 619.744.2200

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARDING SCHOOL REVIEW, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>DELTA CAREER EDUCATION CORPORATION and WESTON EDUCATIONAL, INC., BERKS TECHNICAL INSTITUTE, INC., MCCANN EDUCATION CENTERS, INC., MILLER-MOTTE BUSINESS COLLEGE, INC., SOUTHWEST BUSINESS COLLEGES, INC., and THE MIAMI-JACOBS BUSINESS COLLEGE CO.,<br><br>　　　　　　Defendants. | CIVIL ACTION NO. 11 Civ. 8921 (DAB)<br><br>ECF CASE |
| DELTA CAREER EDUCATION CORPORATION et al.,<br><br>　　　　　　Cross-Claimants,<br><br>　　v.<br><br>BOARDING SCHOOL REVIEW, LLC,<br><br>　　　　　　Cross-Defendant. | |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DELTA'S MOTION FOR RECONSIDERATION

Delta's[1] Motion for Reconsideration is narrowly tailored to address claims relating to BSR's deceptive business practice of deceiving consumers to obtain personal information by misrepresenting its affiliation with for-profit colleges, as well as concealing how and by whom their information will be used.[2] As set forth in Delta's counter claims, BSR deceives consumers in order to obtain personally identifiable information under the false pretense that the user will "Get Admissions Info" for Delta's schools. Counterclaims ¶ 60; *see also* Complaint Exhibit A. In fact, the user never actually receives the information they request. Instead, BSR and/or its marketing partners use bait and switch tactics to contact the user to market programs offered by competing schools. *Id.* This is exactly the type of deceptive trade practice that the FTC is likely to investigate, and that was described in the letter from Congress to the Chairman of the FTC urging just such investigation. *See* Request for Judicial Notice Ex. A. Moreover, potential harm to consumers from deceptive and misleading lead generation practices have resulted in formidable action by both federal and state authorities. The State Attorneys General of 19 states, including the New York Attorney General, brought an action against another lead generator for various types of deceptive lead generation practices under state deceptive trade practices and unfair competition laws. Request for Judicial Notice Exs. B and C. Additionally, the Department of Education amended its Rules and Regulations to make schools liable for any substantial misrepresentations made by their lead generators and/or other parties with whom the school has an agreement to provide marketing and advertising services. *See* Department of

---

[1] Capitalized terms in this brief maintain the definitions set forth in Delta's opening brief unless otherwise stated.
[2] BSR erroneously attempts to mischaracterize its deceptive lead generation practices as merely republication of publically available information. However, as the Court noted in its Order, the deceptive lead generation practices are separate from BSR's publication of information about schools and actionable under trademark and unfair competition laws.

2

Education Program Integrity Issues; Final Rule, 75 Fed. Reg. 66916 (codified as 34 CFR § 668.71).

BSR's opposition to Delta's Motion for Reconsideration hinges on an obvious falsehood: the facts Delta seeks to present to the Court are irrelevant to this Court's earlier conclusion that BSR's lead generation practices cannot plausibly harm consumers and would thus not trigger FTC intervention under 15 U.S.C. § 45. However, the facts offered in Delta's Motion for Reconsideration demonstrate that such harm is not only plausible but probable and have already been the subject of substantial investigations and actions taken by both federal and state agencies and authorities.

Therefore, Delta respectfully requests that the Court reconsider its prior ruling and find that the allegations relating to BSR's deceptive lead generation practices are sufficient to support a deceptive trade practices claim under New York General Business Law § 349 ("Section 349").

## ARGUMENT

I. **The Court Should Exercise Its Discretion to Prevent Manifest Injustice and to Correct an Error.**

　　A.　Motion for Reconsideration Standard.

Delta has set forth valid grounds for reconsideration. Courts can and do consider new evidence on a motion for reconsideration in order to correct a clear error or prevent manifest injustice. *See EEOC v. Local 638 . . . Local 28 of The Sheet Metal Workers' Int'l Ass'n*, 2001 U.S. Dist. LEXIS 19, 2-4 (S.D.N.Y. Jan. 3, 2001) (quoting *Virgin Atlantic Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

BSR's misstates the holding of the *EEOC*. Contrary to BSR's assertion, the court in that case did in fact consider new evidence in the form of financial statistics, although it ultimately ruled that that the new evidence would not have affected its decision. *Id.* at 4. BSR's quote from

this case is taken out of context and ignores the actual holding of the case. The Court held that it has the discretion to reevaluate its earlier ruling, even though new evidence may be precluded under Local Rule 6.3:

> Even though the union's motion for reconsideration fails under Local Rule 6.3, the court still, in its discretion, may reevaluate its earlier ruling depending upon "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). While the financial statistics from the third quarter of 2000 are new, they do not affect the court's previous analysis.
> *Id.* at 2-4.

Similarly, in *In re McRay*, 2012 U.S. Dist. LEXIS 58737 (S.D.N.Y. Apr. 26, 2012) the court considered new evidence when reconsidering its prior decision on defendant's discovery motion. The Court granted the defendant's motion for reconsideration, in part, "[b]ased on the additional information provided to the Court," which proved that certain documents were, in fact, privileged and therefore should not be produced as previously ordered. *Id.*

    B.    <u>Delta is not asserting a new legal theory but merely seeking to correct a mistaken assumption.</u>

BSR's argument that Delta is seeking to introduce a new legal theory is simply untrue. Delta's Motion for Reconsideration does not set forth a new legal theory. It seeks to correct the Court's mistaken assumption that the FTC is unlikely to investigate BSR's deceptive lead generation practices, when in fact, Congress has specifically asked the FTC to conduct just such an investigation.

**II.**    **The Court May Take Judicial Notice of Official Government Action and the Fact That Legal Action Was Brought Under State Deceptive Trade Practices Laws.**

BSR does not challenge the authenticity of the documents for which Delta seeks judicial notice and they are "not subject to reasonable dispute." Therefore, the Court may take judicial notice of these documents. Fed. R. Evid. 201(b).

4

Further, BSR has not cited any cases that would prevent the Court from taking judicial notice of these documents. Indeed, BSR quotes the court in *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150 (2nd Cir. 2006), which sets forth the well settled law that the Court may take judicial notice of other litigation and related filings:

> A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.

Delta has not requested the Court take judicial notice of the truth of terms of the Quinstreet Assurance of Voluntary Compliance. Delta is merely requesting the Court take judicial notice of the fact that the States Attorneys General of 19 different states have already brought an action alleging that deceptive lead generation practices violate state deceptive trade practice laws. It is undisputed that the Court may take judicial notice of the fact of such litigation. *Id.*; *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. N.Y. 1991); *see also Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 293 (S.D.N.Y. 2011).

BSR's belabored attempt to prevent this Court from considering the documents in Delta's Request for Judicial is founded on a fundamental misunderstanding of the law. BSR cites the *Global* case for the proposition that in order to take judicial notice, the information must be integral to the pleadings that are the subject of the motion. However, that is not the rule. Rather, the discussion quoted by BSR describes one of the exceptions to the conversion rule, which states that if a court considers extrinsic evidence on a 12(b)(6) motion, then it converts the motion to a rule 56 motion. Extrinsic evidence is anything that is not in the complaint, integral to the complaint or judicially noticed. *See. Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (integral to the complaint); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74

(2d Cir. 1991) (judicial notice). Therefore, BSR's arguments that the judicially notice material be integral to the complaint are invalid.

Moreover, the materials included in the Request for Judicial Notice are highly relevant to the Court's decision to dismiss the Section 349 claims without leave to amend. In denying leave to amend, the Court stated that BSR's lead generation practices cannot plausibly harm consumers and would thus not trigger FTC intervention under 15 U.S.C. § 45. The letter from Congress to the FTC is highly relevant because it establishes that Congress has asked the FTC to investigate the <u>exact same</u> deceptive lead generation practices employed by BSR. Namely, the practice of misrepresenting an affiliation with for-profit colleges in order to deceive consumers to obtain personal information, as well as concealing how and by whom their information will be used.

The Quinstreet litigation is also highly relevant. Should the Court's order stand, it will set a dangerous precedent that deceptive lead generation practices can never support a claim under Section 349. This will cripple, if not completely extinguish the power of the New York Attorney General and consumers to bring actions similar to the Quinstreet action against other lead generators and marketing agents who harm the public using deceptive lead generation practices.

**III.     BSR Concedes That Leave to Amend Should Be Granted.**

BSR argues that "it is well established that [ ] state-law version of the Lanham Act rise and fall based on the same standards." BSR Opp. to Motion for Reconsideration. As BSR points out in its opposition brief, the Court granted leave to amend certain Lanham Act claims. Therefore, under the reasoning and case law set forth by BSR, since the Court dismissed the Lanham Act claims with leave to amend, the Court should at the very least, also grant leave to amend the state law claims under Section 349. However, for the reasons set forth herein and in the Motion for Reconsideration, Delta submits that these claims should not be dismissed at all.

6

IV.   Conclusion.

In light of the foregoing, Delta respectfully requests the Court reconsider its Order dated March 29, 2013 and enter a revised Memorandum and Order denying BSR's motion to dismiss with respect Delta's deceptive trade practices claim. In the alternative, Delta requests that the Court grant Delta leave to amend its deceptive trade practices claim.

                                    Respectfully submitted,

Dated: May 2, 2013

                                    DUANE MORRIS LLP

                                    By:   s/Michelle Hon Donovan
                                            Keith Zakarin
                                            Michelle Hon Donovan
                                            Heather U. Guerena
                                            750 B Street, Suite 2900
                                            San Diego, CA 92101
                                            (619) 744-2200

                                            R. Terry Parker
                                            1540 Broadway
                                            New York, NY 10036
                                            (212) 692-1000
                                            *Attorneys for Third-Party Plaintiffs*